MOTHERSHEAD *v.* DOUGLAS.

4-9560             243 S. W. 2d 761

Opinion delivered October 22, 1951.

Rehearing denied December 17, 1951.

*R. W. Tucker,* for appellant.

*Chas. F. Cole,* for appellee.

ROBINSON, J. In 1948, a corporation, the Polk-Southard Company, owned considerable property used in the business of mining and processing ore. A. C. Hendrix and A. R. Hendrix held a mortgage on the personal property, securing a note in the sum of $45,000. E. P. Douglas was president of the Polk-Southard Company; J. Roy Nuchols was treasurer, and the other appellees herein were directors and stockholders.

The appellees bought the $45,000 note and mortgage from Hendrix for the sum of $15,000. At that time Polk-Southard was indebted to appellees in the sum of $4,000 for money advanced to that Company. Subsequent to the purchase of the $45,000 note and mortgage, appellees caused Polk-Southard to execute to them a note and mortgage in the sum of $49,000, being the amount of the original note and mortgage for which appellees had paid $15,000, plus the $4,000 appellees had advanced to the Company.

On April 13, 1948, the appellees filed suit to foreclose the mortgage asking judgment in the sum of $49,000 and interest. On June 1st thereafter, a decree of foreclosure was rendered giving appellees judgment in the sum of $49,000 plus interest in the sum of $1,378.66, making a total of $50,378.66. On July 8, 1948, and prior to the sale under the foreclosure decree, the appellant herein, Mothershead, a stockholder, filed an intervention claiming that Polk-Southard was indebted to appellees in the sum of not over $15,000. On July 29th a portion of the property was sold under the decree to the appellee Douglas for the sum of $35,000. On August 17, 1948, the Chancery Court refused to confirm the decree because of the filing of the intervention by Mothershead, and, at the instance of the appellee Douglas, who had purchased the property at the foreclosure sale and was one of the plaintiffs in the suit, appointed C. E. Baxter to take charge of the property. The order of appointment provides:

"To take immediate control and possession of all the property for this Court and for E. P. Douglas, and to make sales of the same at the most advantageous price he is able to obtain, and he is to keep accurate account of sales . . . and he is to report the same to this Court on September 6th and turn into the registry of this Court all money received by him at said sale, and the said money is to be retained in this Court pending the outcome thereof."

Baxter did not report to the Court on September 6th or any other time before the confirmation of the sale,

and paid no money into Court. He acted entirely as agent for Douglas, and, the Court so found in the decree rendered. In disallowing items of expense claimed by Baxter, the Chancellor said:

"In passing upon these items, the Court finds that the said Ed Baxter was not in fact a receiver or appointee of this Court, but should be at all times considered an agent of the plaintiffs for the reason that he was originally appointed at the request of the plaintiffs on August 17, 1948, which was after the foreclosure suit was filed on the 1st of June, and after the intervention was filed on July 8th, and after the first sale was had on July 29th; that he was ordered to pay all money into court which was not done."

In the order dismissing the intervention of Mothershead and approving the sales, the order provides: "And it now appearing that there is no further need for C. E. Baxter to report to this court regarding his actions under said order, and the plaintiffs stating in open court that they are willing that said C. E. Baxter, be relieved of any responsibility to this Court, or to them, for the properties taken possession of by him. . . ."

Also, in the order made on October 7th, the sale of July 29th in the sum of $35,000, and the sale of October 6th in the sum of $7,500 to Douglas were confirmed. The interveners appealed to this court where it was held that insofar as the mortgage indebtedness was concerned, the plaintiffs could only recover from Polk-Southard the amount they had paid for the note and mortgage. But, this amount could not be definitely ascertained from the record before the court. This court said:

"Accordingly, the decree is reversed and the cause remanded with directions to set the sales aside and ascertain the correct amount expended by appellees and enter a decree in their favor and for further proceedings consistent with this opinion." *Mothershead* v. *Douglas*, 215 Ark. 519, 221 S. W. 2d 424.

When the case came up for a hearing again in the Chancery Court, it developed that Baxter had sold a sub-

stantial portion of the property involved for about $20,-000; that he had on hand property with a salvage value of about $9,500, and that property with a salvage value of about $23,000 was unaccounted for. The property which was proven to have been disposed of by Baxter was dismantled and sold to various people, some of whom had in turn resold part of it. It is not clear just what became of the property sold to Douglas by the Commissioner in Chancery on September 6th. In any event, it was definitely ascertained that the property could not be re-assembled and restitution in specie could not be made.

In these circumstances, the appellants say that Douglas is bound by his bid of $42,500. The appellees contend that Douglas made the bid of $42,500 without any regard for the true value of the property, but only because he had recovered judgment in the Chancery Court for about $50,000, and that Douglas should be charged with the actual value which he claims is much less than $42,500. A great deal of evidence was taken in regard to the actual value of the property, and the effect of the Chancery decree was to hold Douglas, the purchaser, liable for only the amount which he or his agent, Baxter, had sold. When the property was sold to Douglas it was in place at the site of the mining operation. It consisted of all kinds of machinery, tools, buildings, pipe, engines, rock crushers, etc., necessary to the business of mining and processing ore. Between the time of the purchase at the foreclosure sales by Douglas and the time the case was reversed by this Court, the property was dismantled and the great portion of it sold to various people; even some of the buildings were sold. It could not be re-assembled and again offered for sale. Section 27-2153, Ark. Stats., provides:

"If any judgment of the Circuit Court shall be reversed by the Supreme Court on writ of error or appeal, and such judgment may have been carried into effect before the reversal thereof, such defendant may recover from the plaintiff in such judgment the full amount paid thereon, including costs, by an action for so much money had and received to his use." Section 27-2156 provides

that § 27-2153 is also applicable in Chancery cases. Construing the statute which is now § 27-2153, Ark. Stat., in the case of *Dodson* v. *Butler,* 101 Ark. 416, 142 S. W. 503, 39 L. R. A. N. S. 1100, this Court said:

"Where property has been recovered or money has been received upon a judgment subsequently reversed, the remedy of the judgment-debtor is to obtain restitution of the identical property recovered, or specific money received, if that can be done; but, in event this cannot be had because the same is not in the possession of the judgment-creditor, then the remedy of the judgment-debtor is the recovery against him for the value of such property obtained by him, or of such money received."

In the case of *McCracken* v. *Paul,* 65 Ark. 553, 47 S. W. 854, the court said: "Plaintiff purchasing at his execution sale, on reversal of the judgment under which the sale is made, is entitled to the benefits of the order of restitution, so that he may restore the property in specie, if he can. If he cannot, he is responsible to the defendant for its loss. If the property is purchased by a third person, the measure of damages is the price it brought at the sale and interest, and if the defendant is the purchaser there is no recovery against plaintiff, except for the money paid, because the defendant has what he claims."

*Freeman On Judgments,* 5th Ed., § 1169, has this to say: "But whether the defendant may elect to affirm the sale, notwithstanding the reversal of the judgment, and recover of the plaintiff the value of the property sold is an unsettled question. According to some authorities he has this privilege. However, this position would seem to be hardly logical, if the action taken under a valid judgment is lawful and the plaintiff's liability is merely that of a trustee to account for property lawfully in his possession. Consequently it has been held that the losing party has the right to restore the thing sold, and when he can do so, cannot be required to account for its value. If the judgment is modified by reducing its amount, the

appellant cannot compel the respondent to keep the property purchased, and to pay the difference between the amount at which it was sold under execution and the amount of the judgment as modified. So if the property sold consisted of stock in a corporation which had deteriorated in value, plaintiff is not required to account for the value of the stock at the time of the sale, nor to retain it at the amount of his bid. On the same theory, the amount which the defendant may recover when the property sold is not restored to him cannot exceed the amount realized at the sale thereof. In other words, insofar as the mere right to restitution is concerned, and independent of any additional claim of negligent or willful tort, the plaintiff is not required to restore a sum in excess of that which he received under the judgment, with interest. Some courts, however, have not so restricted the successful appellant but permit a recovery of all the damage suffered by him.''

Here, we have a situation whereby the plaintiff bought the property at his foreclosure sales for $42,500, and he would be permitted to restore the property in specie if he could do so, but he cannot restore it. Plaintiff claims the value of the property is the sum received by Baxter for that portion sold plus the amount on hand. We do not agree with this theory. A considerable portion of the property was sold by Baxter to the Company that he manages. Baxter says that he sold property to one person for which he received something over $4,000. The purchaser says he paid something over $6,000. Property having a salvage value of about $23,000 is unaccounted for. It is not clear just what became of this property or when it disappeared.

Also, it may be that other bids were made at the sales, and that plaintiff Douglas bid $42,500 because it took that amount to top some other person's bid. It is pretty well established that the salvage value of all the property, including that unaccounted for, amounts to some $57,000. When all the facts and circumstances in this case are taken into consideration, we think that,

since Douglas cannot restore the property in specie, he is bound by his bids amounting to $42,500.

On cross-appeal, appellees contend that the intervention should have been dismissed because no bond for costs was filed as provided in § 27-2301, Ark. Stats. Even if this section of the statutes should be construed as applying to an intervener, (which we do not decide) no motion to require bond was filed until after the original judgment, which was too late. *Adair* v. *Quincy Stove Mfg. Co.*, 119 Ark. 263, 177 S. W. 909. Also, appellees contend Mothershead's stock should be cancelled and judgment rendered against him for stock in the sum of $3,750; that Baxter should have been allowed a fee, and that Douglas should have been allowed $1,505 as expenses. We find no merit in appellees' cross-appeal.

Reversed on appeal with directions to enter a decree not inconsistent with this opinion.

Affirmed on cross-appeal.

WARD, J., not participating.