Jeannette E. SMITH, James E. and Paula Parker, and James Larry Smith *v.* John Paul and Shirley LEONARD and Leonard's Hardware, Inc., an Arkansas Corporation

93-1118 876 S.W.2d 266

Supreme Court of Arkansas
Opinion delivered May 31, 1994

*Wright, Lindsey & Jennings*, by: *Roger D. Rowe* and *Troy A. Price*, for appellant Jeannette E. Smith.

*Mobley, Smith & Mobley*, by: *William F. Smith*, for appellants James E. and Paula Parker.

*Edgar, Perigo & Hilsabeck, Inc.*, by: *Steven E. Edgar*, for appellant James Larry Smith.

*Davidson, Horne, & Hollingsworth*, by: *Derrick M. Davidson; Robert E. Irwin* and *Laws & Murdoch, P.A.*, by: *Ike A. Laws*, for appellees.

ROBERT H. DUDLEY, Justice. The main issue in this case is whether a stockholder in a closely held family corporation breached his duty to the other shareholders when he gained majority control. The chancellor ruled there was no breach of duty to the minority stockholders. We affirm.

This is the third appeal involving this case. *See Smith* v. *Leonard*, 310 Ark. 782-B, 840 S.W.2d 167 (1992) and *Leonard* v. *Leonard's Hardware, Inc.*, 309 Ark. 450, 828 S.W.2d 846 (1992). The essential facts viewed in the light most favorable to the appellees, as we must do, are as follows. In 1902, Leonard's Hardware was founded in Russellville by the grandfather of appellee John Paul Leonard and, commencing in 1955, was operated as a partnership by Leonard and his brother-in-law, W.O. Tibbels. Tibbels's half-interest in the partnership was transferred to his two daughters, appellants Jeannette Smith and Paula Parker. In 1981, the business was incorporated as Leonard's Hardware, Inc. Ten thousand shares of stock were authorized, but only six hundred shares were issued. Appellee Leonard and his wife, Shirley, were issued three hundred shares as joint tenants, or half of the issued stock. *See* Ark. Code Ann. § 4-25-105 (Repl. 1991). Appellant Jeannette Smith and her husband, James Larry Smith, were issued one hundred fifty shares, or a quarter of the issued stock, and appellant Paula Parker and her husband, James Parker, were issued the other one hundred fifty shares. The corporation purchased the interests of the partners in the partnership by issuing promissory notes. The real estate was retained in the Leonard-Smith-Parker partnership. The board of directors of the new corporation consisted of Leonard and his nieces' husbands, James Larry Smith and James Parker. James Larry Smith and James Parker were active in the daily operations of the business. Although Jeannette Smith and Paula Parker shared ownership of the stock with their husbands, they entrusted the management of the business to them and looked to them for information.

In June 1988, appellee Leonard, the president of the corporation and a principal stockholder, learned that James Larry Smith, a director and the secretary-treasurer, and James Parker, a director, had been embezzling funds from the corporation. Leonard confronted both of them, and each admitted his malfeasance. Leonard testified that Parker said he would pay back the money and that Leonard's niece, Paula Parker, said she would see to it

that he or they would pay it back, and she apologized for Parker's misdeeds. Parker and his wife subsequently arranged to repay the corporation the money Parker had taken. After that time Parker continued to represent his wife in all corporate matters, including voting her stock at stockholder meetings.

Smith was unable to make restitution. His only assets of any consequence were his undivided interests in the one hundred fifty shares of stock, the note, and the partnership realty. On July 1, 1988, Leonard, Parker, and Smith went to the corporation's attorney, James K. Young, for advice. As a result of the meeting, the remaining 9,400 shares of stock were issued, with 5,000 being issued to Leonard and his wife, 2,500 to the Parkers, 1,250 to appellant Jeannette Smith, and 1,250 to James Larry Smith. The corporation's promissory note to Smith in the amount of $113,167.16 was given back to the corporation, and, in exchange, the corporation issued two promissory notes for the same total, one to appellant Jeannette Smith in the amount of $56,583.58, and the other to James Larry Smith in the amount of $56,583.58. Smith and his wife also executed a warranty deed to the corporation for their 25% interest in the real estate. Later, the corporation reconveyed a 12 1/2% interest in the partnership real estate back to Jeannette Smith.

Smith pledged his stock and promissory note to the corporation as security for his debt. The pledge provided that a "sufficient amount of stock and note is hereby transferred to Leonard's Hardware to cover" the debt, and any part of the stock or note that was not necessary to satisfy the debt would be returned to Smith. It further provided that the amount of the debt would be established as soon as possible, as follows:

> Leonard's Hardware, through its president, John Paul Leonard, agrees to proceed expeditiously toward determining the outstanding indebtedness, and upon determining the indebtedness will proceed forthwith to issue to James Larry Smith the stock and notes in the amount to be received by him.

Smith's promissory note was dated July 1, 1988, and was endorsed as follows: "I, James Larry Smith, hereby assign this Promissory Note to Leonard's Hardware to secure indebtedness

owed them." The date of July 1, 1988, appears by Smith's signature.

James K. Young, the attorney, testified that by the date of the meeting in his office, July 1, 1988, appellant Jeannette Smith was aware that her husband had been embezzling from the corporation and that Smith's note, stock, and real estate were being transferred to the corporation as security for his debt to the corporation. One week later, on July 8, 1988, Leonard purchased ten shares of stock from Smith for $1,656.00. These ten shares came from the stock Smith had pledged to the corporation. Leonard voted these shares on at least one occasion. However, on October 16, 1990, Leonard returned the shares to the corporation and received $1,656.00 from the corporation.

Leonard testified that Smith subsequently attempted to sell his stock first to Parker and then to Leonard. He stated that Parker and Smith had a first option agreement with each other and Leonard had second option. He additionally testified that Smith asked $500,000 for his stock, which was far more than it was worth. By January of 1989, Leonard concluded that the amount Smith had embezzled was $160,526.51 and so notified Smith.On March 13, 1989, Smith wrote back to Leonard as follows:

John,

I'm sorry that it's taken me so long to get back to you concerning my debt and the checks that you sent me.

After review of all the documents and the checks that you have given me I realize that the debt is far greater than I had anticipated, however there are several items that I am not responsible for and am sure of.

I want this part of my life to be over. At this time I wish to sign and deliver all of my stock in Leonard's Hardware, Inc. to the store to be distributed to its present stockholders at their [illegible] percentage of stock holdings, in exchange for a clear release of my indebtedness. Plus a check to me in the amount of the credit balance on my personal account as of 3/1/89.

Sincerely,

Larry Smith

cc Jeannie Smith
 Jim Parker

P.S. Please reply immediately.

In May of 1989, Leonard and Smith met and agreed that the amount embezzled by Smith exceeded the value of the stock, the note, and the value of the real estate already transferred to the corporation. As a result, Leonard accepted the pledged property on behalf of the corporation as treasury stock in full satisfaction of Smith's debt. At that time the corporation had unrestricted earned surplus.

Jeannette Smith filed this action on August 23, 1990, and sought rescission of the issuance of the 9,400 shares of stock, damages for Leonard's alleged breach of fiduciary duty to her as a minority stockholder, and dissolution of the corporation. The Parkers intervened and sought similar relief. James Larry Smith also intervened and sought to rescind his pledge, pay his indebtedness, and recover the 1,250 shares of stock. The chancellor denied the relief, and the Smiths and the Parkers appeal.

The two determinative findings of fact by the chancellor were as follows:

> John Leonard acted on behalf of the corporation and in its best interest by recovering funds misappropriated by James Smith, even though he may have personally benefitted by the change in ownership.

> In recovering the misappropriated funds, John Leonard did not conceal the method of recovery. John Leonard did not deceive the shareholders about the purpose for recovering the misappropriated funds.

From those findings of fact, the chancellor reached the following conclusion of law.

> John Leonard did not breach his fiduciary duty by recovering the misappropriated funds from James Smith.

> The transfer of James Smith's stock into the corporation's treasury was a valid corporate act.

Appellants' main point of appeal is that the chancellor erred in the conclusion that Leonard did not breach his fiduciary duty to the other shareholders in recovering the embezzled funds when he, at the same time, gained majority control of the corporation. Appellants contend that there should have been shareholder meetings, a disclosure of facts and legal consequences to the minority stockholders, and shareholder authorization for Leonard to act as he did.

The first question is whether the acquisition of Smith's stock as treasury stock was undertaken in compliance with the governing statutes. The parties agree that the Arkansas Business Corporation Act is the governing statutory authority. The applicable statute governing the acquisition by a corporation of its own stock is section 4-26-611 of the Arkansas Code Annotated of 1987, which provides in pertinent part:

> (a) A corporation shall not purchase directly or indirectly any of its own shares unless the purchase is authorized by this section and not prohibited by its articles of incorporation.
>
> . . . .
>
> (d) A corporation may purchase its own shares out of unrestricted earned surplus, *this purchase to be authorized by the board of directors, and no stockholders' authorization is required.*
>
> . . . .
>
> (f) In exercising the powers conferred by this section, it is not required that the shares purchased by the corporation must be purchased pro rata by the shareholders, or ratably from the holders of all the shares of any class or series. *However, this section is not intended to validate stock purchases designed to effect fraudulent, improper, or unfair liquidating distributions to one or more shareholders; or fraudulently, improperly, or unfairly designed to augment the voting power of any one (1) or more shareholders; or otherwise designed to effect any fraudulent, unfair, or improper discrimination in favor of any one (1) or more shareholders as against others.*

Ark. Code Ann. § 4-26-611(a), (d), & (f) (Repl. 1991) (emphasis added).

There was substantial evidence that there was sufficient unrestricted earned surplus to allow the purchase authorized by the board of directors; therefore, a shareholders' authorization was not required by statute. Thus, the question becomes whether Leonard acted unfairly toward the minority stockholder appellants so as to breach his fiduciary duty and, as a consequence, lose the protection of the business judgment rule.

■ The standard of conduct for directors of a corporation is set out in section 4-27-830 of the Arkansas Code Annotated of 1987, which provides in pertinent part:

A. A director shall discharge his duties as a director, including his duties as a member of a committee:

1. In good faith;

2. With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

3. In a manner he reasonably believes to be in the best interest of the corporation.

Ark. Code Ann. § 4-27-830(A) (Repl. 1991).

We addressed the application of these standards, which by common law is known as "the business judgment rule," in *Hall* v. *Staha*, 303 Ark. 673, 800 S.W.2d 396 (1990), and wrote:

The rule is a rebuttable presumption that directors are better equipped than the courts to make business judgments and that the directors acted without self-dealing or personal interest and exercised reasonable diligence and acted with good faith.

*Id.* at 678, 800 S.W.2d 398 (quoting *Gries Sports* v. *Cleveland Browns Football Co.*, 496 N.E.2d 959 (Ohio 1986)). We set out a two-part test for the propriety of its application: (1) that the protection can "only be claimed by disinterested directors whose conduct otherwise meets the tests of business judgment," and (2) that directors exercise their duty to inform themselves of "all

material information reasonably available to them prior to making a business decision." *Id.*

Appellants contend that Leonard was not a disinterested director, but rather that he personally benefitted from the corporation's purchase of treasury stock, and cite us to *Andersen* v. *J.M. Anderson Mfg. Co.*, 90 N.E.2d 541 (Mass. 1950). The cited case is readily distinguishable. It held that, in a case with facts comparable to those of the case at bar, the plaintiffs stated a cause of action. It was not a holding on the merits. Here the chancellor did not dismiss the complaint for failure to state a cause of action, but heard all of the evidence and found there was a predominating corporate purpose for the transaction, even though Leonard also received a benefit. The chancellor also found that Leonard did not deceive the shareholders and did not conceal his actions. In addition, there was substantial evidence and fair inferences from that evidence to support a finding that all shareholders were aware of all of Leonard's actions as they took place. We review chancery cases *de novo* and will not reverse a finding of fact unless it is clearly erroneous. *Conway Corp.* v. *Construction Eng'rs, Inc.*, 300 Ark. 225, 782 S.W.2d 36 (1986). The chancellor's findings of fact were not clearly erroneous. The findings supported the chancellor's conclusion of law that the transaction was a fair and informed one and that it was in the best interest of the corporation. *See, e.g., Gries Sports* v. *Cleveland Browns Football Co.*, 496 N.E.2d 959, 968 (1986).

Appellants' next point of appeal is that the chancellor erred in finding the pledge agreement conferred authority on Leonard to settle the debt owed by Smith. After Leonard learned that Smith and Parker had been embezzling from the corporation, he confronted them, and after some discussion it was determined that Smith was unable to repay the amount he had stolen. All were aware that Smith's only assets of consequence were his interests in the company. With the supervision of the corporation's attorney, an arrangement was made by which Smith pledged his stock and promissory note. All three members of the board were present. Leonard subsequently determined the amount Smith had embezzled, and realized that it exceeded the value of the items pledged. Smith surrendered the pledged instruments as complete satisfaction of the debt. Appellants contend that Leonard exceeded his authority by accepting the pledge and that there

should have been a shareholder vote on the matter. Under the applicable Arkansas statutes, all corporate powers may be exercised by the board of directors unless limitations are set by the articles of incorporation. *See* Ark. Code Ann. § 4-26-801(a) (Repl. 1991). The chancellor correctly concluded that the transfer of Smith's stock into the corporation's treasury was a valid corporate act.

■ Appellants additionally contend that the chancellor erred in ruling that Smith's pledge was accepted in satisfaction of his indebtedness. The essential elements for accord and satisfaction are proper subject matter, competent parties, an assent or meeting of the minds of the parties, and consideration. *See Holland* v. *Farmers & Merchants Bank*, 18 Ark. App. 119, 711 S.W.2d 481 (1986). Usually, there are two elements to be considered. One, that there be a disputed amount involved, and two, that there be a consent to accept less than the claimed amount in satisfaction of the whole. *Jewell* v. *General Air Conditioning Corp.*, 226 Ark. 304, 289 S.W.2d 881 (1956).

■ The chancellor heard evidence that Smith wrote Leonard a letter after Leonard had determined the amount of the debt. Smith responded and wrote, in part, "I realize that the debt is far greater than I anticipated, however there are several items that I am not responsible for and am sure of." Leonard and Smith subsequently met and determined the items for which Smith declined responsibility. Subsequently, they agreed on the acceptance of Smith's interests pledged in satisfaction of the debt. This constituted substantial evidence for the chancellor's finding of fact and a sound basis for his conclusion of law.

■ After the trial had been completed, Smith tendered a check in settlement of his debt and demanded that his stock be returned. The chancellor ruled that Smith's tender should be returned, and it has been returned. Appellants contend that the chancellor erred in ordering Smith's tender returned. Since the tender has been returned, the issue is moot, but even if it had not been returned, the argument is without merit. A part of the Arkansas Uniform Commercial Code, section 4-9-506 of the Arkansas Code Annotated of 1987, provides that a debtor will only have the right to redeem collateral if done so before the obligation has been discharged. Ark. Code Ann. § 4-9-506 (Repl. 1991).

The debt was discharged when the stock was accepted as treasury stock in satisfaction of the debt. *Id.* § 4-9-505(2). The tender was too late and of no effect.

 The chancellor concluded as a matter of law that Leonard's conduct did not constitute oppression that would mandate dissolution of the corporation, and appellants assign the conclusion as error. Section 4-26-1108 of the Arkansas Code Annotated of 1987 provides for the judicial dissolution of a corporation when the "acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent." Ark. Code Ann. § 4-26-1108(a)(1)(B) (Repl. 1991). Appellants contend they are oppressed because their reasonable expectations of a return on investment have not been met. We have not previously addressed either "oppression" or "reasonable expectations." *See* Frances Fendler Rosenzweig, *Protecting the Rights of Minority Shareholders in Close Corporations Under the New Arkansas Business Corporation Act*, 44 Ark. L. Rev. 1, 54 (1991). Cases from other jurisdictions are scant, but *In re Kemp & Beatley, Inc.*, 473 N.E.2d 1173 (N.Y. 1984), cited by appellants, is instructive. The Court of Appeals of New York set out a standard as follows:

> Defining oppressive conduct as distinct from illegality in the present context has been considered in other forums. The question has been resolved by considering oppressive actions to refer to conduct that substantially defeats the "reasonable expectations" held by majority shareholders in committing their capital to the particular enterprise.
>
> . . . .
>
> A shareholder who reasonably expected that ownership would lead him or her to a job, a share of corporate earnings, a place in corporate management, or some other form of security, would be oppressed in a very real sense when others in the corporation seek to defeat those expectations and there exists no effective means of salvaging the investment.
>
> . . . .
>
> A court considering a petition alleging oppressive conduct

must investigate what the majority shareholders knew, or should have known, to be the petitioner's expectations in entering the particular enterprise. Majority conduct should not be deemed oppressive simply because the petitioner's subjective hopes and desires in joining the venture are not fulfilled. Disappointment alone should not necessarily be equated with oppression.

*Id.* at 1179 (citations omitted).

■ Appellants received their corporate stock in exchange for their partnership interests. At that time, neither Paula Parker nor Jeannette Smith were promised employment by the corporation or by Leonard. Both of their husbands were in fact employed by the corporation. The facts prove only a case of disappointment, and the chancellor did not err when he ruled that the facts proved did not constitute oppression.

■ We do not address one of appellants' assignments of error. In it, appellants contend that the chancellor erred in failing to declare void the issuance of the additional 9,400 shares of stock. They argue that the issuance of the additional stock was a stock split and since the stock in the corporation had a par value, the corporation could not split its stock without appropriate amendments to the articles of incorporation and without adjusting the par value of the outstanding stock. Consequently, they argue that the issuance of the additional shares was void. We do not reach the argument because it does not appear that such an argument was brought to the attention of the trial court either at the original trial on the merits or after remand from this court. *See Smith* v. *Leonard*, 310 Ark. 782, 840 S.W.2d 167 (1992). Even if such an argument were made, the chancellor did not rule on it. A party will not be allowed to argue an issue for the first time on appeal, and even if it were argued, it is up to appellants to obtain a ruling on the issue. *Firstbank of Arkansas* v. *Keeling*, 312 Ark. 441, 850 S.W.2d 310 (1993).

Affirmed.

HAYS, J., not participating.