Ross D. GLOVER and Debbie Glover
*v.* WOODHAVEN HOMES, INC.

01-175                                        57 S.W.3d 211

Supreme Court of Arkansas
Opinion delivered November 1, 2001

*Dover & Dixon, P.A.*, by: *David A. Couch*, for appellants.

*Jon Johnson*, for appellee.

DONALD L. CORBIN, Justice. This appeal raises an issue of first impression as to the date that interest begins to accrue on a judgment, following a remand and modification by an appellate court. Appellee Woodhaven Homes, Inc., asserts that the chancellor was correct in finding that the interest began to accrue

on June 12, 1997, the date that the original judgment was entered. Appellants Ross and Debbie Glover contend that the relevant date is January 19, 2000, the date that the judgment was modified by the Arkansas Court of Appeals. Alternatively, Appellants argue that it is irrelevant when the interest began to accrue because they already tendered a check to Appellee in full accord and satisfaction of the judgment. They argue that the chancellor erred in finding no accord and satisfaction. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(1). We find no error and affirm.

This case originated in a lawsuit filed by Appellee to recover amounts due under a home-construction contract. The case was tried in the chancery court and resulted in a judgment for Appellee in the amount of $29,435.31, plus attorney's fees of $2,500.00. Appellants appealed the judgment, and the court of appeals remanded the case with instructions for the chancellor to clarify the manner in which he calculated the damages. *See Glover v. Woodhaven Homes, Inc.*, CA 98-1 (Ark. App. September 30, 1998) (*Glover I*). Upon remand, the chancellor found that the recalculation showed that Appellee was actually entitled to judgment in the amount of $30,005.75, plus attorney's fees. On appeal, the court of appeals affirmed the judgment for Appellee, but modified the amount to $24,940.53. *See Glover v. Woodhaven Homes, Inc.*, CA 99-388 (Ark. App. January 19, 2000) (*Glover II*).

Following the decision in *Glover II*, the chancery court held a hearing on the issue of when interest on the judgment began accruing. Appellants argued that *Glover I* reversed and vacated the original judgment, such that it no longer existed. Appellants asserted that interest did not begin accruing until January 19, 2000, the date that the decision in *Glover II* was delivered. The chancellor rejected Appellants' arguments and awarded interest on the judgment, as modified on appeal, from the date of the original judgment, June 12, 1997. The chancellor found that *Glover I*, although styled as a reversal and remand, did not reverse the original judgment, but only remanded the matter for clarification as to how the damages were calculated. The chancellor reasoned that because the first appeal was not a reversal of the merits of the case, the initial judgment against Appellants was never reversed or vacated. Thus, the chancellor found that neither decision from the court of appeals amounted to a reversal of the judgment in favor of Appellee, and that, accordingly, it was proper to award postjudgment interest from the date that the original judgment was entered.

■ On appeal, Appellants argue that the chancellor erred in finding that interest began accruing from the date of the original judgment. We review chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Forrest Constr., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001); *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* With this standard in mind, we review Appellants' argument.

The issue presented in this appeal is one of first impression in Arkansas: When does interest begin to accrue on a judgment that has been appealed? We conclude that when the appellate decision does not result in an actual reversal of the judgment, the interest begins accruing from the date of the original judgment. We find support for our conclusion in decisions from other jurisdictions.

In *Kneeland v. American Loan & Trust Co.*, 138 U.S. 509 (1891), the Supreme Court held that in determining whether the original judgment was reversed, courts should look beyond the descriptive language used in an appellate decision and ascertain the actual effect of the decision. There, the Court held that the first appeal, although styled as a reversal, was not a true reversal, because all that remained on remand was for the trial court to strike part of the award. The Court held:

> While the former decrees were in terms reversed, and the cases remanded for the entering of new decrees, yet the terms of those new decrees were specifically stated; and, in so far as the separate and distinct matters embraced in the former decrees were ordered to be incorporated into the new, it is to be regarded as *pro tanto* an affirmance. Equity regards the substance, and not the form. *The rights of parties are not to be sacrificed to the mere letter; and whether the language used was reversed, modified, or affirmed in part and reversed in part is immaterial.* Equity looks beyond these words of description to see what was in fact ordered to be done.

*Id.* at 511–12 (emphasis added).

Similarly, the California Supreme Court has held that "[i]t is not the form of the order on the first appeal that controls but the substance of that order." *Snapp v. State Farm Fire & Cas. Co.*, 388 P.2d 884, 887 (Cal. 1964). Citing to *Stockton Theatres, Inc. v.*

*Palermo*, 360 P.2d 76 (Cal. 1961), the court held that when a judgment is reversed on appeal, the new award subsequently entered by the trial court can bear interest only from the date that the new judgment is entered. Conversely, when a judgment is modified on appeal, either upward or downward, the new amount draws interest from the date of entry of the original order. In *Snapp*, the plaintiffs had been granted judgment in the amount of $8,168.25. The appellate court reversed the judgment, with directions to the trial court to enter judgment in the full amount of the insurance policy. In the second appeal, the insurance company argued that the trial court was correct to award interest only from the date of the order entered on remand. The supreme court disagreed, holding that the first appeal was, in law and in fact, a modification of the original judgment, as no issues remained to be determined on remand and no further evidence was necessary. The court thus concluded that interest on the modified amount commenced on the date of the original judgment.

More recently, in *Ulibarri v. Gee*, 764 P.2d 1326 (N.M. 1988), the Supreme Court of New Mexico cautioned that courts must not disregard the substance of an appellate order in deference to its form. The court explained:

> The basic rule is that when this Court reverses and effectively wipes out all or a portion of a judgment, rendering it a nullity, and remands for new findings and the award of damages through the exercise of discretion, then interest accrues from the date of the new judgment; but with mere modification, interest accrues from the date of the original judgment.

*Id.* at 1326. The court thus rejected a mechanical approach to viewing appellate decisions based solely on the terms of art used therein, in favor of the approach set out by the Supreme Court in *Kneeland*, 138 U.S. 509.

As stated above, this court has never addressed the issue of computation of postjudgment interest following a reversal by an appellate court. However, in *Mothershead v. Douglas*, 221 Ark. 756, 255 S.W.2d 953 (1953), this court awarded interest from the date of the original order following modification of the judgment on appeal. That case was the fourth appeal from a suit brought by corporate directors against the corporation to foreclose on a mortgage that the directors had purchased to pay off a debt owed by the corporation. The trial court initially found in favor of the directors and ordered foreclosure. On appeal by the intervening stockholders,

this court reversed the judgment of foreclosure. *See Mothershead v. Douglas*, 215 Ark. 519, 221 S.W.2d 424 (1949). While that appeal was pending, however, one of the directors, Douglas, had disposed of some of the foreclosed property. On remand, the chancery court entered judgment against the director, but only for the amount of the property that he or his agent had sold. This court again reversed and directed the chancellor to enter judgment for the full amount of the foreclosure bid. *See Mothershead v. Douglas*, 219 Ark. 457, 243 S.W.2d 761 (1951). Thereafter, the chancery court entered judgment as instructed by this court, and the stockholders again appealed. In the final appeal, this court modified the amount of the judgment and ordered that interest be awarded from the date of the original judgment confirming the foreclosure sale. This court held:

> The record, when this case was before us in our original opinion, above, 215 Ark. 519, 121 S.W.2d 424, shows that the property here involved was sold to and confirmed in E. P. Douglas and the other above named plaintiffs on October 7, 1948, and therefore the interest (as indicated) *must be computed from that date.*

221 Ark. at 759, 255 S.W.2d at 954 (emphasis added).

██ ██ From the foregoing holdings, we conclude that when a judgment is affirmed in a modified amount, the new amount draws interest from the date of the original judgment. When, however, the judgment is reversed on appeal, any new award subsequently entered by the trial court may bear interest only from the date that the new judgment is entered. In determining whether an appellate decision is a reversal or merely a modification, we agree with the Supreme Court that we must look not only to the words used therein, but also to the legal effect of the decision. In other words, we are persuaded that the rights of the parties must not be sacrificed by placing form over substance.

Applying these principles to the present case, we conclude that the chancellor was correct to award postjudgment interest from the date of the original judgment. The first appeal, although styled as a reversal and remand, amounted to nothing more than a remand for clarification. Indeed, the opinion specifically reflects the inability of the appellate court to reach the merits of the case, because it was unable to understand how the chancellor arrived at the amount of damages that he awarded. The opinion did not instruct the chancellor to decide any new issues or hear any additional evidence. This conclusion is supported by the language of the second appeal, wherein the court of appeals explained the effect of its first decision:

The remand was therefore *limited to clarification of the method used to determine damages and to correction of any erroneous calculations.* Beyond that, it was not intended to permit the chancellor to revisit and revise his findings for any other purpose or with any other motivation.

*Glover II*, CA 99-388, slip op. at 9 (emphasis added).

██ In sum, the first appeal did not, in any way, reverse or vacate the original judgment entered in favor of Appellee. Moreover, the second appeal was a mere modification of the amount of the judgment awarded to Appellee. Accordingly, because neither the first nor the second appellate decisions amounted to a reversal of the chancellor's original judgment in favor of Appellee, it was proper to award postjudgment interest from the date of the original judgment. The chancellor was thus correct to look beyond the precise styling of the appellate decisions to determine their legal effect. In reaching our conclusion, we are mindful that the purpose of awarding postjudgment interest, which is governed by Ark. Code Ann. § 16-65-114(a) (1987), is to compensate judgment creditors for the loss of the use of money adjudged to be due them. *Estate of Otto v. Estate of Fair*, 316 Ark. 674, 875 S.W.2d 487 (1994). We thus affirm the chancellor's ruling on this point.

Likewise, we affirm the chancellor's finding that Appellants failed to prove their claim of accord and satisfaction. Appellants claimed below that following the second appeal, they tendered a cashier's check in the amount of $25,463.90, drawn on Metropolitan Bank, to Appellee's attorney in full satisfaction of the modified judgment. Appellants claimed that they heard nothing from Appellee on the matter until two weeks later when they learned that the check had been used to purchase a certificate of deposit at Metropolitan Bank. Appellants contended that Appellee's failure to return the check or otherwise respond to the offer demonstrates its acceptance. The chancellor disagreed, finding that the check was never cashed by Appellee and was not accepted by Appellee as full settlement of Appellants' obligation.

██ "Accord and satisfaction" is defined as a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than the amount to which the latter considers himself entitled. *Fort Smith Serv. Fin. Corp. v. Parrish*, 302 Ark. 299, 789 S.W.2d 723 (1990) (citing *Jewell v. General Air Conditioning Corp.*, 226 Ark. 304, 289 S.W.2d 881 (1956)). The essential elements to prove accord and satisfaction are: (1) proper subject

matter; (2) competent parties; (3) an assent or meeting of the minds; and (4) consideration. *Smith v. Leonard*, 317 Ark. 182, 876 S.W.2d 266 (1994). The key element is a meeting of the minds, such that there must be an objective indicator that the parties agreed that the payment tendered will discharge the debt. *Parrish*, 302 Ark. 299, 789 S.W.2d 723. Accord and satisfaction is an affirmative defense that must be proved by the party asserting it. Ark. R. Civ. P. 8(c); *Parrish*, 302 Ark. 299, 789 S.W.2d 723.

██ ██ The evidence in this case falls woefully short of demonstrating that there was a meeting of the minds of the parties. To the contrary, the evidence shows only that Appellants tendered a cashier's check to Appellee's representative, and that the check was never returned to Appellants. There is no evidence showing that Appellee's representative cashed the check or otherwise accepted the proceeds as full satisfaction of the judgment. During the hearing below, Appellee's attorney explained that when he received the check, he contacted the bank and reported that the check was not sufficient to cover the judgment. The bank then instructed him to return the check to the bank, at which time the bank would issue a certificate of deposit and hold the money until a decision could be made by the chancery court. The chancellor evidently found this explanation credible, and we defer to the chancellor's superior position to observe the parties before him. *See Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). In short, it was Appellants' burden to prove that the parties agreed that the amount tendered satisfied the judgment in full. Because they failed to present such proof, we cannot say that the chancellor's finding on this issue was clearly erroneous.

Affirmed.