# RAY TOWNSEND FARMS, INC.
## and Ray Townsend, Individually *v.*
## Marjorie T. SMITH

CA 04-800                                        207 S.W.3d 557

Court of Appeals of Arkansas
Opinion delivered April 27, 2005

*T. David Carruth*, for appellants.

*Daggett, Donovan, Perry & Flowers* by: *Robert J. Donovan*, for appellee.

JOHN B. ROBBINS, Judge. Appellee Marjorie Smith sued her nephew, appellant Ray Townsend,[1] for allegedly mishandling the assets of a corporation in which they each owned fifty percent of the stock. Following a trial, the jury entered a verdict against appellant for $200,000 in compensatory damages and $50,000 in punitive damages. Sometime thereafter, the trial judge ordered liquidation of the corporation. Appellant now appeals and argues that the trial court erred in: 1) granting appellee a directed verdict on certain issues; 2) depriving him of his Seventh Amendment right to a trial by jury; 3) instructing the jury on punitive damages; 4) ordering liquidation of the corporation; 5) appointing a receiver for the purpose of liquidating the corporation. We affirm in all respects.

Ray Townsend Farms, Inc. (hereafter "the corporation"), was formed in 1973 by Herman Ray Townsend, who was appellant's grandfather and appellee's father. Its primary, if not sole, asset was a large tract of land in Monroe County. The corporate shareholders and directors as of February 5, 1974, were Herman Townsend; appellee and her husband, Jim Smith; and Ray's father and mother, Harold and Marie Townsend. After the deaths of Herman Townsend, Jim Smith, and Harold Townsend, appellant inherited some of the corporate stock, and, as of February 1991, the shareholders were: appellee, with 5,000 shares; appellant, with 4,670 shares; and appellant's mother Marie, with 330 shares.

On February 4, 1991, an annual shareholders' meeting was held, the first since 1974. Appellant and his mother were present, but appellee was not; she was not notified of the meeting. At the meeting, appellant was elected a director of the corporation, and a directors' meeting was then held, wherein appellant was elected president and secretary-treasurer of the corporation. Appellant and his mother also voted to pay appellant $15,000 annually for the

---

[1] Although both Ray Townsend and Ray Townsend Farms, Inc., are named as appellants in this case, the appeal is primarily prosecuted by Ray individually. We will therefore refer only to a singular appellant for the sake of simplicity.

years 1988 to 1991 as compensation for maintenance of the corporate property and other work performed on behalf of the corporation. The minutes reflect that the corporation did not have the money to pay appellant at that time but would pay him in the future.

On September 27, 1995, a special meeting of the corporation's board of directors was held to consider the sale of corporate land to the United States Department of the Interior, Fish and Wildlife Service. According to the minutes of this meeting, appellee had communicated with appellant and expressed an interest in selling the land. Although the minutes reflect that appellee did not actually attend this meeting, she would later testify that she agreed to sell the property and agreed with the price. Following the meeting, a corporate resolution was drafted allowing appellant as "de facto President and Secretary" to execute a contract for the sale of 713.5 acres of the corporate property to the U.S. Fish and Wildlife Service.

On February 5, 1996, while the sale was pending, the corporation held another annual shareholders' meeting with appellant and his mother being the only ones present; appellee was not notified and did not attend. The minutes from this meeting show that appellant was again elected president and secretary. Further, appellant and his mother voted that, from the anticipated proceeds of the land sale, appellant would be 1) paid $15,000 per year from 1988 to 1996 for managing the property, as per an agreement he had with his late father, 2) reimbursed $9,281.68 for maintenance, improvements, and taxes paid on the land, and 3) reimbursed $10,957.27 for legal fees incurred in litigation between the corporation and the State Highway Commission.[2] They also voted to reserve $15,000 for additional litigation expenses, because the lawsuit was ongoing.

---

[2] The State Highway Commission had a right-of-way over the corporation's land and in 1992 sought an injunction requiring appellant and the corporation to remove certain structures from the right-of-way. Four appeals were prosecuted in the case, with the Commission ultimately prevailing. *See Townsend v. Arkansas State Highway Comm'n*, 326 Ark. 731, 933 S.W.2d 389 (1996); *Townsend v. Arkansas State Highway Comm'n*, 322 Ark. 122, 907 S.W.2d 726 (1995); *Arkansas State Highway Comm'n v. Townsend*, 317 Ark. 581, 879 S.W.2d 447 (1994); *Arkansas State Highway Comm'n v. Townsend*, 313 Ark. 702, 858 S.W.2d 66 (1993). Appellant managed the litigation in these cases and employed various attorneys, including David Carruth, to represent him and the corporation.

The land sale was consummated on or about May 29, 1996, and the U.S. Fish and Wildlife Service paid the corporation $487,577.65. Appellant placed the proceeds into his attorney David Carruth's trust account, and the proceeds were disbursed as follows:

> 1. Six separate payments to appellant in the amounts of $50,000, $25,000, $10,000, $50,000, $50,000, and $15,000, for a total of $200,000;

> 2. Three payments to attorney David Carruth totaling $43,225;

> 3. Six payments to various clerks and tax officials totaling $1,908.69;

> 4. Two payments to the U.S. Fish & Wildlife Service (purpose unknown) totaling $1,300; and

> 5. Two payments to Merchants & Planters Bank totaling $230,000 for a certificate of deposit, part of which was later used to purchase for the corporation 529 acres in Sharp County for $201,000.[3]

According to attorney Carruth, a balance of $12,166.31 was left in his trust account after these disbursements, and, following the trial of this matter, he tendered that amount into the court registry.

On December 22, 1997, after unsuccessfully attempting to ascertain the details of the land sale and disbursement of the proceeds, appellee sued appellant and the corporation in Monroe County Circuit Court. She asserted that she and appellant each owned 5,000 shares of the corporate stock (Marie apparently having died some time after the 1996 meeting) and that appellant had acted without authority in distributing the proceeds of the land sale. By her complaint and a later amended complaint, she sought monetary damages, removal of appellant as a director, and liquidation of the corporation.

At the trial held on April 25, 2002, appellee claimed more specifically that appellant acted in bad faith by mishandling the proceeds of the land sale and by illegally holding the 1991 and 1996

---

[3] There is no explanation in the record for the $29,000 discrepancy between the cost of the land and the value of the certificate.

shareholders' meetings without a quorum and without notice to her. She further urged that, in light of appellant's conduct and their deadlock as equal shareholders, grounds existed to liquidate the corporation. At the close of all the evidence, the trial judge granted a partial directed verdict in appellee's favor, ruling that: 1) no quorum was present at the 1991 and 1996 meetings, thus making the actions taken at those meetings illegal; 2) appellee was not given notice of the meetings; 3) grounds existed to liquidate the corporation. As a result of the court's ruling, the jury was instructed that:

> Ladies and gentlemen, the Court has reached certain conclusions of law regarding this case which you are to accept. Those conclusions are as follows:
>
> One, that there was not a quorum of the shareholders present at the annual meeting of the shareholders held on February 4, 1991 and any action taken at that and the subsequent directors meeting is without effect.
>
> Two, the annual meeting of the corporation held on February 5, 1996 is also without effect because a quorum was not present and David Ray Townsend was not a director of the corporation.

The question of whether appellant was guilty of bad faith and misapplication of corporate assets went to the jury. Following deliberations, the jury rendered a unanimous verdict in favor of appellee and against appellant individually for $200,000 in compensatory damages and $50,000 in punitive damages.

Judgment on the jury's verdict was entered on June 3, 2002. On August 9, 2002, the court entered an order asking the parties to agree on a receiver to be appointed for liquidation of the corporation. Appellant appealed from these two orders, but we dismissed the appeal for lack of finality. See Ray Townsend Farms, Inc. v. Smith, CA03-6 (Sept. 10, 2003) (not designated for publication). Following the entry of the June 3 and August 9, 2002, orders, the trial court entered an order on September 30, 2002, appointing a receiver. Then, on March 29, 2004, the court entered a liquidation order directing the receiver to sell the corporation's Sharp County property and deposit the proceeds into the court registry. Upon completion of the liquidation of assets, the court stated, the corporation would be dissolved. Appellant now appeals from the March 29, 2004, liquidation order.

*Timeliness of Appeal*

■ We first address appellee's argument that appellant's appeal was filed too late. She contends that the September 30, 2002, order appointing a receiver was an appealable order, and therefore appellant should have appealed from it rather than the March 29, 2004, liquidation order. We hold that appellant properly appealed from the March 29, 2004, order.

Arkansas Rule of Appellate Procedure – Civil 2(a) (2004) provides that an appeal "may be taken" from certain interlocutory orders, among them, an order appointing a receiver. *See* Ark. R. App. P. – Civ. 2(a)(7); *see also Boeckmann v. Mitchell,* 322 Ark. 198, 909 S.W.2d 308 (1995) (holding that interlocutory appeals from orders appointing a receiver are permitted). The word "may" is generally interpreted to mean permissive or discretionary rather than mandatory. *See Hopper v. Garner,* 328 Ark. 516, 944 S.W.2d 540 (1997). By using the word "may," we believe that our supreme court intended for Rule 2(a) to permit certain interlocutory appeals but not to require that they be taken at the interlocutory stage. Thus, appellant could have appealed from the order appointing the receiver, but he was not required to do so. *See also Bell v. Wilson,* 298 Ark. 415, 418, 768 S.W.2d 23, 25 (1989) (overruling the case of *Smith v. Smith,* 235 Ark. 932, 362 S.W.2d 719 (1962), which had declared an appeal untimely where the appellant failed to file a notice of appeal from an interlocutory partition order; the *Bell* court stated that "we expressly overrule *Smith v. Smith,* and those cases holding that the appeal must be taken at an interlocutory stage in the proceedings."). Further, the order that appellant has appealed from — the March 29, 2004, liquidation order — is a final, appealable order, directing the receiver to sell the corporate property and place the proceeds into the court registry. *See generally Scherz v. Mundaca Inv. Corp.,* 318 Ark. 595, 886 S.W.2d 631 (1994) (holding that, where the trial court appointed a commissioner and ordered the sale of property, its directive was put into execution, and the order was final).

In light of the above, we conclude that appellant has appealed from a final order. Under Ark. R. App. P. – Civ. 2(b) (2004), his appeal also brings up for review any intermediate order involving the merits and necessarily affecting the judgment. Thus, the issues raised in this case are subject to our jurisdiction and proper for our review. We therefore proceed to the merits.

### Grant of Partial Directed Verdict

Appellant argues that the trial court erred in ruling, by virtue of a directed verdict, that 1) there was no quorum present at the 1991 and 1996 shareholders' meetings, 2) no notice of the meetings was given to appellee, and 3) grounds existed for liquidation of the corporation. In reviewing an order granting a motion for directed verdict, this court views the evidence in the light most favorable to the party against whom the verdict was directed, and if any substantial evidence exists that tends to establish an issue in favor of that party, it is error for the trial court to have granted the motion for directed verdict. *Hayes v. Advanced Towing Servs.*, 73 Ark. App. 36, 40 S.W.3d 800 (2001).

Appellant first contends that a jury question existed as to whether a quorum was present at the 1991 and 1996 annual shareholders' meetings. The corporate bylaws state that "a majority of the holders of the outstanding voting stock of the Corporation shall constitute a quorum for the transaction of business." The 1991 and 1996 meetings were attended by appellant and his mother, who, as two of the three shareholders, constituted a majority of those persons holding stock. However, as owners of only 5,000 of the 10,000 shares, they did not represent a majority of the outstanding corporate shares. Appellee, who owned the remaining 5,000 shares, was not in attendance. At trial, appellee's expert witness, Raymond Abramson, testified that the bylaws should logically be interpreted to mean that a quorum consists of a majority of the shares rather than a majority of shareholders. Otherwise, he said, shareholders with very small amounts of stock could constitute a quorum in the absence of a majority shareholder. Appellant argues, however, that the express language of the bylaws provides that a majority of share*holders*, as opposed to a majority of shares, constitutes a quorum. Because he and his mother constituted a majority of share*holders*, he claims, there was evidence that a quorum was present at the meetings, and a directed verdict was therefore improper.

Appellant's interpretation of the corporate bylaws is not unreasonable in light of the language used therein. However, the interpretation cannot stand under Arkansas law. Our legislature has decreed that a quorum for purposes of a shareholders' meeting is a majority of the shares entitled to vote, unless the

corporation's articles of incorporation provide otherwise. Arkansas Code Annotated section 4-26-705(a)(1) (Repl. 2001)[4] reads:

> Unless otherwise provided in the articles of incorporation, a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of shareholders, but in no event shall a quorum consist of less than one-third (1/3) of the shares entitled to vote at the meeting.

The statute permits a deviation from the "majority of shares" rule only if so provided in the articles of incorporation. In the case at bar, there is no evidence that the corporation's articles of incorporation, as opposed to its bylaws, defined a quorum. Arkansas's corporate statutes and corporation law generally make a clear distinction between articles of incorporation and bylaws. Articles of incorporation are set forth by the original incorporators, Ark. Code Ann. § 4-26-202 (Repl. 2001), and may only be amended by a vote of two-thirds of the shares entitled to vote. *See* Ark. Code Ann. § 4-26-302 (Repl. 2001). Bylaws, however, are to be adopted by the board of directors and may be amended by a majority of board members. Ark. Code Ann. § 4-26-809 (Repl. 2001). Further, bylaws are not to contain provisions inconsistent with the articles of incorporation. *See* Ark. Code Ann. § 4-26-809(a)(3) (Repl. 2001). The legislature has obviously determined that the quorum requirement for shareholders' meetings is of such importance that its legal definition may only be altered in the articles of incorporation, *i.e.*, by the original incorporators or by a two-thirds vote of the shareholders. Further, it is generally recognized that, when a statute commands that a provision governing shareholder rights be set out in the certificate of incorporation but the provision is not so set out, a bylaw that purports to regulate the shareholder rights is void. *See* 8 William Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 4190 at 775 (Rev. ed. 2001); *see also Roach v. Bynum*, 403 So. 2d 187 (Ala. 1981), and cases cited therein. Moreover, if the legislature had intended to allow corporate bylaws to alter the statutory quorum requirement it could have done so. *See, e.g.*, Ark. Code Ann. § 4-26-806 (Repl. 2001) (providing that a majority of directors constitutes a quorum

---

[4] All statutory references in the parties' briefs and in this opinion are to Arkansas's pre-1987 Business Corporations Act; the corporation in this case was formed in 1973 and has not opted, according to Abramson's testimony, to govern itself under the new act, which went into effect in 1987. *See* Ark. Code Ann. §§ 4-27-101, *et seq.* (Repl. 2001).

"unless a greater number is required by the articles of incorporation *or the bylaws*.") (Emphasis added.)[5]

Because appellant and his mother held only fifty percent of the corporate shares, their presence at the shareholders' meetings did not constitute a quorum under Arkansas law. Further, there was no evidence that the corporation's articles of incorporation altered Arkansas law regarding the composition of a quorum. As a result, a quorum was not present at the shareholders' meetings, and the trial court was correct in directing a verdict on that point.

■ The next point concerns the trial court's determination, via a directed verdict, that appellee received no notice of the annual shareholders' meetings. Arkansas Code Annotated section 4-26-703(a) (Repl. 2001) requires that written or printed notice stating the place, day, and hour of shareholders' meetings be delivered personally or by mail not less than ten days nor more than fifty days before the meeting to each shareholder of record entitled to vote. Actions taken at a shareholders' meeting of which absent shareholders had no notice are illegal. *Marine Servs. Unlimited, Inc. v. Rakes*, 323 Ark. 757, 918 S.W.2d 132 (1996).

Appellant does not dispute that actual notice of the meetings was not given to appellee. However, he contends that, because the bylaws provide for annual meetings to be held on the first Monday in February at the corporate offices in Clarendon, Arkansas, at 2:00 o'clock in the afternoon, appellee had what might be termed "standing notice" of the annual meetings. Appellant cites no authority nor makes any convincing argument that, if a corporation's bylaws contain an established annual meeting date, the statutory notice requirements may be dispensed with. Further, his argument seems contrary to the general law of corporations that actual notice of annual meetings must be given to all voting shareholders. *See* 2 James D. Cox and Thomas Lee Hazen, *Corporations* § 13.13 (2d ed. 2003) (recognizing that, while it was once the prevailing view that if bylaws fixed the annual meeting date no further notice was needed, modern statutes require that notice be given to every shareholder a certain number of days before the meeting). In light of these factors, we find no reversible error on this point.

---

[5] *See also Taylor v. Hinkle*, 360 Ark. 121, 200 S.W.3d 387 (2004), suggesting that, where there is an ambiguity as to whether a quorum requires a majority of shares or a majority of shareholders, the majority of shares is the more logical choice.

■ Appellant's final challenge to the partial directed verdict concerns the trial court's declaration that grounds existed to liquidate the corporation's assets. Arkansas Code Annotated section 4-26-1108(a)(1) (Repl. 2001) provides that a circuit court shall have "full power" to liquidate corporate assets in an action by a shareholder when it is established:

> (A) That the directors are deadlocked in the management of the corporate affairs, and the shareholders are unable to break the deadlock and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

> (B) That the acts of the directors or those in control of the corporation are illegal, oppressive, or fraudulent; or

> (C) That the shareholders are deadlocked in voting power and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

> (D) That the corporate assets are being misapplied or wasted.

Appellant makes two arguments on this point. First, he contends that, in order to liquidate the corporation, all four of the above statutory factors must be proven. However, the use of the disjunctive "or" between the clauses indicates an alternative, either-or choice. *See generally Bailey v. State*, 348 Ark. 524, 74 S.W.3d 622 (2002). Thus, only one of the four factors must be established to permit liquidation.

Second, appellant argues that a jury question existed as to whether the four statutory factors were established. The initial problem with this argument is that appellant continues to premise it on the erroneous idea that all four of the statutory factors must be shown before liquidation can occur. In any event — and leaving aside the question of whether it is the province of the jury or the court to liquidate a corporation — the evidence in this case was so undisputed on at least one of the four statutory factors that a directed verdict was justified. Appellant and appellee, as equal shareholders in this family corporation, were deadlocked in their voting power. *See* Ark. Code Ann. § 4-26-1108(a)(1)(C). Irreparable harm to the corporation was threatened by this deadlock because, as the testimony at trial showed, appellant and appellee strongly disagreed as to whether they wanted the corporation to

keep or sell the 529 acres in Sharp County, thus placing the corporation's primary asset in limbo. Such clear evidence of grounds for liquidation distinguishes this case from *Lyon v. Bolliger*, 221 Ark. 423, 253 S.W.2d 773 (1952), and *Corning Custom Gin Co. v. Oliver*, 171 Ark. 175, 283 S.W. 977 (1926), which are cited by appellant in support of his argument (and which, in any case, were decided prior to the enactment of the above quoted liquidation statute).

For the foregoing reasons, we affirm the trial court's grant of a partial directed verdict on the issues of quorum, notice, and grounds for liquidation.

### Seventh Amendment Right to Jury Trial

■ As an adjunct to the above argument, appellant contends that the grant of the partial directed verdict violated his right to a trial by jury under the Seventh Amendment to the United States Constitution.[6] However, as appellee correctly points out, the Seventh Amendment to the U.S. Constitution has not been extended to the states through the Fourteenth Amendment. *See Colclasure v. Kansas City Life Ins. Co.*, 290 Ark. 585, 720 S.W.2d 916 (1986), *cert. denied*, 481 U.S. 1069 (1987). Further, dissolution of a corporation is traditionally viewed as an equitable action. *See Fletcher Cyclopedia of the Law of Private Corporations, supra* at § 8034.10; 19 AM. JUR. 2D *Corporations* § 2375 (2d ed. 2004); 19 C.J.S. *Corporations* § 836 (1990). The right to a jury trial does not extend to traditionally equitable cases. *See Southern Farm Bureau Cas. Ins. Co. v. Tallant*, 362 Ark. 17, 207 S.W.3d 468 (2005). *See generally Colclasure, supra; Mitchell v. House*, 71 Ark. App. 19, 26 S.W.3d 586 (2000). We therefore find no error in this regard.

### Punitive Damages Instruction

■ At trial, appellant objected to the jury being instructed on punitive damages because no malice had been proven. An instruction for punitive damages may be given when there is evidence that a party likely knew or ought to have known, in the light of the surrounding circumstances, that his conduct would naturally or probably result in injury and that he continued such

---

[6] Appellant makes no argument concerning any right to a jury trial under the Arkansas Constitution.

conduct in reckless disregard of the consequences from which malice could be inferred. *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998).

Appellant testified at trial that he thought he had a quorum for the shareholders' meetings; that he sold the corporate property with appellee's approval; that, over the years, he had been solely responsible for paying insurance and property taxes on the land and maintaining the land; that he alone had been in charge of the State Highway Commission litigation, with appellee refusing to get involved; that he deposited the proceeds of the land sale into his lawyer's trust account; and that, for tax purposes, he purchased another piece of land in Sharp County. These factors, appellant asserts, show a lack of evidence that he acted with malice.

We believe that the evidence justified the punitive-damages instruction. Appellant, in cooperation with his mother, elected himself an officer and director of the corporation without notice to appellee, who was at that time the majority shareholder and one of two living directors. Further, after selling the corporate property as "de-facto" president, which, according to attorney Abramson, indicated appellant's knowledge that he may have been acting without authority, appellant held another shareholders' meeting and directors' meeting without notice to appellee, at which he and his mother approved various disbursements to him from the anticipated proceeds of the sale. Once the proceeds were in hand, he placed them not in a corporate account but in his lawyer's trust account. Thereafter, he purported to reimburse himself for certain expenses, but the withdrawals were in suspiciously round figures and did not comport with the 1996 corporate vote on which he purportedly relied. The disbursements, as well as the land purchase in Sharp County, were made without the knowledge or input of appellee as a director and majority shareholder. From these factors, the jury might well have concluded that appellant misapplied corporate assets to his own benefit and without regard for appellee's rights, and therefore he knew or ought to have known that, in the light of the surrounding circumstances, his conduct would naturally or probably result in injury, and yet he continued such conduct in reckless disregard of the consequences.

### Appointment of a Receiver and Order of Liquidation

Appellant argues in his last two points that there was no reason for liquidation of the corporation and therefore no reason to appoint a receiver. It has already been sufficiently discussed in

this opinion that at least one of the statutory grounds for ordering liquidation existed. That being the case, the court had the authority to appoint a receiver to supervise the sale of corporate assets. *See* Ark. Code Ann. § 4-26-1106(a)(10) (Repl. 2001). The authority cited by appellant in support of his argument, *Smith v. Leonard*, 317 Ark. 182, 876 S.W.2d 266 (1994), is noteworthy for its holding that "oppressive conduct" as grounds for liquidation under Ark. Code Ann. § 4-26-1108(a)(1)(B) does not occur simply because the complaining stockholder's subjective expectations have not been met. However, the evidence supporting liquidation in this case extends beyond appellee's mere disappointment in appellant's conduct, not to mention that there also existed shareholder deadlock as a ground for liquidation under Ark. Code Ann. § 4-26-1108(a)(1)(C).

For the above reasons, we affirm on all arguments presented.

HART and GRIFFEN, JJ., agree.