Ronnie HOUSELY and Thereisa Housely  *v.*  Danna HENSLEY,
Executrix of the Estate of Mabel Housely, Deceased

CA 07-111                                    265 S.W.3d 136

Court of Appeals of Arkansas
Opinion delivered October 10, 2007

*Jerry D. Patterson,* for appellants.

*Morgan Law Firm, P.A.,* by: *M. Edward Morgan,* for appellee.

ROBERT J. GLADWIN, Judge. Appellants Ronnie and Thereisa Housley bring this appeal challenging the judgment in favor of appellee Danna Hensley, Executrix of the Estate of Mabel Housley, in the total amount of $120,798.30. The lawsuit stems from appellants' default on a promissory note and security agreement previously executed in favor of Mrs. Mabel Housley. On appeal, appellants challenge the circuit court's findings of fact as clearly erroneous and claim that the award was in excess of what appellee was entitled. We affirm.

Appellant Ronnie Housley (Ronnie) was a relative of Mrs. Mabel Housley's husband, Robert. Ronnie assisted the Housleys on their farm, and after Mr. Housley died in 1992, he continued to assist Mrs. Housley on the property, as well as taking her to doctors' appointments, providing other transportation, and generally doing things for her around the house and farm. Sometime after her husband's death, Mrs. Housley decided to sell all of the cattle and farm equipment she owned to Ronnie for $112,700. He paid $6,000 down, leaving a balance owing of $106,700. On January 20, 1993, appellants executed a promissory note payable to the order of Mrs. Housley in the sum of $106,700, due in nine annual installments of $6,000, plus accrued interest at five percent, beginning on January 30, 1994. The note also contained a provi-

sion that stated the entire principal balance and all accrued interest became due and payable in one balloon payment on January 30, 2004.

There is a dispute regarding the installment payments, specifically whether they were tendered in a timely manner, as alleged by appellants, but either refused in whole or in part by Mrs. Housley; however, the parties agree that the following amounts were actually paid and received against the indebtedness:

| Principal Payment | Interest | Principal Payment |
|---|---|---|
| 07/28/1994 | $5,300 | $5,000 |
| 05/01/1995 | $5,000 | $5,000 |
| 12/23/1996 | $4,000 | $-0- |
| 07/08/1997 | $-0- | $5,000 |
| 12/05/1998 | $5,000 | $-0- |
| 01/30/1999 | $-0- | $-0- |
| 01/30/2000 | $4,750 | $5,000 |
| 01/30/2001 | $-0- | $-0- |
| 01/30/2002 | $-0- | $-0- |
| 01/30/2003 | $-0- | $-0- |
| 01/30/2004 | $-0- | $-0- |

Ronnie contends that he provided a number of services to Mrs. Housley that she accepted in lieu of payment of the amounts due under the note and that, at her direction, monies were reinvested in the farm in lieu of making payment of legal tender to her.

Appellee filed a complaint against appellants on January 3, 2006. Appellants responded that all amounts that were due and payable before January 3, 2001, were not recoverable as they are barred by the applicable five-year statute of limitations. The circuit court determined that the statute of limitations did not begin to run until January 30, 2004, the date upon which the balloon payment became due and payable, and awarded a total of $120,798.30 to appellee. The letter judgment was entered on September 25, 2006, and appellants requested the circuit court issue written findings of fact and conclusions of law. On November 1, 2006, the circuit court issued those findings and conclusions, and appellants filed a petition for relief from judgment on the same day. The circuit court never ruled on the petition, and appellants

filed a notice of appeal of the judgment on November 27, 2006, contending that the most that could have possibly been awarded to appellee is $58,700, an amount consisting of the three installments of $6,000 that became due and owing on January 30, 2001, 2002, and 2003, plus their interpretation of the final balloon payment of $40,700 that became due and owing on January 30, 2004.

The standard of review for bench trials is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Smith v. Eisen*, 97 Ark. App. 130, 245 S.W.3d 160 (2006). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Hodge v. Hodge*, 97 Ark. App. 217, 245 S.W.3d 695 (2006). We give special deference to the superior position of the trial judge to evaluate the credibility of witnesses and their testimony; however, we give no deference to the trial judge's conclusions on questions of law. *Id.*

We note initially that several of appellants' arguments are not properly preserved because appellants stipulated prior to trial that the only defense they were trying the case on was accord and satisfaction. This occurred at a hearing on appellee's motion for summary judgment regarding an alleged cancellation of the debt, which was granted. Although appellants point to references to their other affirmative defenses, such as forgiveness of the obligations, payment or release, statute of limitations, and accord and satisfaction that were addressed by the circuit court in its findings of fact and conclusions of law issued at appellants' request, appellee argues that the appellants were required to raise before the circuit court the *precise* defenses and arguments to be relied upon on appeal to ensure that there is an opportunity for them to be fully developed. *See Lee v. Hot Springs Vill. Golf Schs.*, 58 Ark. App. 293, 951 S.W.2d 315 (1997). We agree. A party may not wait until the outcome of a case to assert a legal argument, *see Foundation Telecomm., Inc. v. MoeStudio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000), nor can he change the grounds for an objection on appeal and is bound by the scope and nature of the objections presented at trial. *Id.*

## I. *Tender of Payments*

Arkansas Code Annotated § 4-3-603 (Repl. 2001) deals with tenders of payment as follows:

(a) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b) If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an endorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(c) If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay interest after the due date on the amount tendered is discharged. If presentment is required with respect to an instrument and the obligor is able and ready to pay on the due date at every place of payment stated in the instrument, the obligor is deemed to have made tender of payment on the due date to the person entitled to enforce the instrument.

Appellants cite *First State Bank of DeQueen v. Gamble*, 14 Ark. App. 53, 685 S.W.2d 173 (1985), for the premise that because of the wrongful refusal of tender, they were discharged from further interest accruing on the note, at least as to those installment payments that had been tendered. They assert, without providing specific examples, that there was ample evidence of Ronnie having tendered the payments to Mrs. Housley at various times, which she refused during her lifetime. They contend that for each of the installments he tendered, the accrual of the interest stopped upon the tender and only the principal amount could still be due and owing.

As to the alleged tender of the remainder of the payments, there was no testimony as to exactly what amounts were tendered or when. Given the inconsistencies of the actual payments that were paid and received, which appellants do not dispute, we will not assume that all of the full payments were actually tendered in a timely fashion. Even had this argument been properly preserved, we hold that appellants have failed to meet their burden on this particular defense.

## II. Tender & Payment

Appellants discuss various definitions and meanings for the term "payment" and state that, in a restricted sense, it is (1) the

discharge of an obligation in whole or in part; (2) by the actual or constructive delivery; (3) of money *or its equivalent,* such as property or *services*; (4) by the obligor or someone for him; (5) to the obligee; (6) for the purpose of extinguishing the obligation in whole or in part; (7) its acceptance as such by the obligee. (Emphasis added by appellants.) 60 Am. Jur.2d *Payment,* § 1 at 611. They point out that payment is largely a question of intention between the obligor and the obligee. The question of whether the transfer of money, or something else, is to operate as payment is ordinarily determinable by the intention of the parties to the transaction and the substance of the transaction itself. Appellants state that the only essential difference between a tender and a payment is that a tender is not accepted and a payment is.

Appellee points out that the only evidence of the tender of payments and provision of services in lieu of payment was Ronnie's testimony; his wife Thereisa was never called as a witness to verify that testimony. There is, however, documentary evidence that conflicts with the testimony, including the note itself. The note was discovered intact after Mrs. Housley's death with no indication that the terms had been forgiven or satisfied without payment. Multiple witnesses, including appellee, who was Mrs. Housley's tax advisor, testified that Mrs. Housley had never stated that the terms of the obligation had been satisfied. There was testimony that she always referred to the obligation as outstanding, and that she told individuals that Ronnie owed her the money and would pay it even after she was gone.

Appellee also points out that the agreement for the sale of cattle and farm equipment, to be performed over a ten-year period, falls under the statute of frauds, and accordingly, any modification to the original terms would have to be in writing. *See* Ark. Code Ann. § 4-59-101(a)(6) (Repl. 2001). Any agreement such as alleged by the appellants to substitute services for money owed is a material modification. In order to be effective, the modification would have had to be in writing. It is undisputed that appellants have produced no such writing, and therefore, have failed to meet their burden of proof.

Additionally, appellee asserts that whether there was a partial payment on the amount owing is dependent upon whether such an agreement existed between appellants and Mrs. Housley, and that is a question of fact completely within the province of the finder of fact. *See Taylor v. Hinkle,* 360 Ark. 121, 200 S.W.3d 387

(2004). Again, there is no evidence before us, other than Ronnie's self-serving testimony, that supports appellants' defenses of tender and/or payment. There was sufficient evidence before the circuit court that conflicted with appellants' account to satisfy this court that the circuit court's ruling was not clearly erroneous.

### III. Accord & Satisfaction

An accord and satisfaction is a settlement in which one party agrees to pay and the other to receive different consideration or a sum less than the amount to which the latter believes he is entitled. *Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 57 S.W.3d 211 (2001). Accord and satisfaction is an affirmative defense, and the party asserting it must prove the following elements: (1) proper subject matter; (2) competent parties; (3) an assent or meeting of the minds; (4) consideration. *Id.* Appellants allege that Ronnie provided a number of personal services to Mrs. Housley and that she accepted such as payment of the amounts due under the note. They further contend that, at her direction, monies were reinvested into the farm in lieu of making payment in legal tender to her, as required by the note and security agreement. Ronnie points out that appellee admitted that Mrs. Housley told her how much she appreciated the things Ronnie did for her. He maintains that the only testimony that disputes this defense was that Mrs. Housley never specifically told appellee that she had forgiven cash payments or accepted services in lieu of the cash.

In *Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000), this court discussed accord and satisfaction and stated that there must be a disputed amount involved and a consent to accept less than the amount in settlement of the whole before acceptance of the lesser amount can be an accord and satisfaction. *See also Hardison v. Jackson*, 45 Ark. App. 49, 871 S.W.2d 410 (1994); *Mademoiselle Fashions, Inc. v. Buccaneer Sportswear, Inc.*, 11 Ark. App. 158, 668 S.W.2d 45 (1984). The validity of an accord and satisfaction is dependent upon the same basic factors and principles that govern contracts generally, *Inge, supra*, and the burden of proving the agreement is simply the burden of proving a contract: offer, acceptance, and consideration. *Id.* The defense of accord and satisfaction presents an issue of fact, and appellants had the burden of proving accord and satisfaction. They failed to do so.

We agree with appellee that the trial court correctly applied the rule of law regarding accord and satisfaction, and that appellants simply failed to meet their burden of proof with respect

to this issue. Appellants have simply failed to show any objective evidence that Mrs. Housley ever agreed to accept either (1) less money for full payment of the indebtedness evidenced by the promissory note, or (2) other services performed by Ronnie, or monies reinvested in the farm in lieu of the payments called for in the note. There was no testimony as to the amount or frequency of services performed or the value of such services. Similar questions exist regarding the alleged improvements made to the farm. There was no objective indicator of agreement that any smaller sum was to operate as a full satisfaction of the debt as set out in *Fort Smith Service Finance Corp. v. Parrish*, 302 Ark. 299, 789 S.W.2d 723 (1990). Likewise, appellants failed to present evidence of any consideration for such an agreement. There is simply no evidence of tender of payment, forgiveness of debt, or accord and satisfaction through his "provision of services."

## IV. *Statute of Limitations*

Arkansas Code Annotated § 4-3-118 (Repl. 2001) deals with the applicable statute of limitations for negotiable instruments and states that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within five (5) years after the due date or dates stated in the note or, if a due date is accelerated, within five (5) years after the accelerated due date." Additionally, Arkansas Code Annotated § 16-56-111(a) (Repl. 2005) states that actions to enforce written obligations, duties, or rights shall be commenced within five years after the cause of action shall accrue. Appellants cite *Karnes v. Marrow*, 315 Ark. 37, 864 S.W.2d 848 (1993), and *Riley v. Riley*, 61 Ark. App. 74, 964 S.W.2d 400 (1998), regarding appellate court rulings stating that when a debt is payable in installments, the statute of limitations runs against each installment from the time it becomes due. Appellants point out that it is undisputed that the complaint in this case was filed on January 3, 2006, so the "look-back period" would go back to January 3, 2001, five years earlier. They maintain that any amounts that were due and payable before that time are not recoverable because they are barred by the statute of limitations. Rather than looking to the installments that had previously become due and payable, the circuit court looked to the term of the note that provided for a balloon payment on January 30, 2004, of "the entire principal balance and all accrued interest." Appellants argue that the fact that there was a balloon payment at the end

of the note does not preclude the application of the statute of limitations to those installments that had become due and payable prior to January 3, 2001.

Appellee initially notes that this defense has been waived; however, she clarifies what she deems a fundamental inaccuracy in appellants' argument with respect to this issue. Appellants claim that the circuit court did not correctly apply the law in regard to the statute of limitations claim with respect to the installment payments, but appellee says this creates a false impression that the circuit court actually ruled on this defense. She explains that the circuit court did not rule on the claim because it was not raised by motion prior to the trial on the merits, and in fact, appellants stipulated just prior to trial that the only defense they were relying upon was accord and satisfaction. She asserts that the issue was waived and cannot be resurrected on appeal at this late juncture.

█ Even if we were to consider the argument, there is no merit to the defense under these facts. Appellee acknowledges that, under Ark. Code Ann. § 16-56-111, the statute of limitations on a promissory note to be paid in installments runs against each installment from the time it becomes due. *See Karnes, supra.* However, she urges us to look at the terms of the agreement to determine when the payment "becomes due." The complaint was filed on January 3, 2006, and clearly she was able to recoup payments going back on installments for five years, or January 3, 2001, but *Karnes* and *Riley* can be distinguished from the instant case due to the provision that states "[t]he entire principal balance and all accrued interest shall be due and payable in one balloon payment on 30th day of January, 2004." We agree with the circuit court's interpretation of the provision to mean that the final payment, due on January 30, 2004, was to be a balloon payment of any unpaid balance on the note. Accordingly, the term "principal balance" would include everything that remained unpaid on the date the last balloon payment came due; therefore, the damage claim includes everything that remains unpaid throughout the course of the note. We hold that the circuit court's finding that the claim is not barred by the statute of limitations was proper.

There is evidence that Mrs. Housley was a meticulous record keeper and very careful with money; also, Ronnie possessed experience in the field of banking. The parties evidenced the indebtedness with a promissory note and security agreement, with advice from legal counsel, yet there is no indication that there

was any type of writing attempting to release appellants from the obligations evidenced by those documents. There is no indication, beyond Ronnie's testimony, that Mrs. Housley simply forgave the obligation, and he was never named a beneficiary of her estate. There is neither evidence of the alleged tender of payments beyond Ronnie's testimony nor other witnesses to those conversations between Ronnie and Mrs. Housley. Ronnie admitted that he helped Mrs. Housley because she was a ninety-year-old lady who needed help and that there was no agreement that he was providing the services as repayment of the debt. Although he contends he was the only relative Mrs. Housley could trust, she chose another relative, her nephew Ted Moore, to write checks from her personal account the last ten months of her life. We hold that the circuit court's findings were not clearly erroneous or clearly against the preponderance of the evidence. Accordingly, we affirm.

Affirmed.

PITTMAN, C.J., and ROBBINS, J., agree.