

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–15–609

| | |
|---|---|
| GEORGE WHEATLEY D/B/A VELOCITY SPORTS ACADEMY<br><br>APPELLANT<br><br>V.<br><br><br>DIXIE MALL 2003, LLC<br><br>APPELLEE | **Opinion Delivered** February 10, 2016<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. CV-15-191-6]<br><br>HONORABLE DOUG SCHRANTZ, JUDGE<br><br>AFFIRMED |

## CLIFF HOOFMAN, Judge

Appellant George Wheatley d/b/a Velocity Sports Academy (Wheatley) appeals from the Benton County Circuit Court's March 30, 2015 order for immediate possession and June 4, 2015 judgment in favor of appellee Dixie Mall 2003, LLC (Dixie). On appeal, appellant contends that (1) the trial court erred by issuing the writ of possession; (2) the trial court erred by not allowing appellant to introduce evidence as to the cost and types of improvements he had made to appellee's building between the time he signed the lease and the time he opened for business; and (3) the trial court's judgment awarding costs and attorney's fees to appellee should be reversed automatically if the court reverses its order for immediate possession. We affirm.

On February 10, 2015, appellee filed a complaint for unlawful detainer and writ of possession, alleging that appellant had violated the permitted-use provision of the lease by offering strength-and-conditioning classes, fitness-training classes, and exercise machines on

SLIP OPINION

the premises. Appellee alleged that it served appellant with the first written notice of violation on December 18, 2014 ("first notice"), and a second written notice of violation on January 27, 2015 ("second notice"). After appellant failed to comply with the notices, appellee alleged that it served appellant with a termination notice ("termination notice") on February 6, 2015. However, appellant refused to surrender possession. Therefore, appellee alleged in the complaint that appellant was in unlawful possession. Appellant filed an answer and objection to the writ of possession on February 13, 2015. In his answer, appellant generally denied that the activities violated the permitted-use provision of the lease. Additionally, appellant affirmatively pleaded that appellee's claims were barred by "waiver, laches, estoppel, unclean hands, and material breach of contract by [appellee.]"

A trial was held on February 26, 2015. At trial, Frank Cooper, the general manager at the Frisco Station Mall, testified that appellant sought to lease a space at the mall to open his batting-cage business and agility classes for team sports. Cooper explained that appellant failed to mention that he also wanted to offer strength-and-conditioning classes, Zumba classes, and exercise equipment. Another tenant in the mall, Planet Fitness, was already offering health, weight-loss, and fitness classes. Additionally, Planet Fitness's lease limited the activities of other tenants. Therefore, Cooper testified that section 1.1(h) of the lease permitted appellant to use the premises only for a batting-cage area and for speed or agility training. Furthermore, the provision specifically prohibited appellant from using free weights or exercise machines or from selling memberships for speed and agility training. He further testified that after appellant had placed rowing machines on the premises and offered adult

workout and fitness classes, Planet Fitness filed a lawsuit against appellee based on appellant's violation of the permitted-use provision.

Cooper testified that the notices of violation were sent to appellant's home address, pursuant to the terms of the lease. The first notice was sent on December 18, 2014, after Planet Fitness complained that appellant was offering Zumba classes. After receiving the first notice, appellant agreed in a conversation that he would stop the Zumba classes. Cooper testified that he received confirmation that a second notice was delivered on January 29, 2015, after Planet Fitness had filed a lawsuit against appellee for appellant's violation of the permitted-use provision. Specifically, Planet Fitness alleged that appellant offered rowing machines and adult-workout classes. After appellant initially failed to respond to the second notice, Cooper testified that he contacted appellant. Appellant told Cooper that he did not receive the second notice because he had moved and was no longer living at the address listed in the lease. A series of emails and communications subsequently took place regarding the second notice, during which time appellant received a copy of the second notice. Cooper further testified that he visited the premises around 2:30 p.m. on February 4, 2015, and observed that the rowing machines were still available in the training area; therefore, a termination notice dated February 6, 2015, was delivered. Additionally, Cooper testified that appellant was still offering strength-and-conditioning classes, workout classes, and fitness classes for adults, in violation of the lease.

On cross-examination, Cooper admitted that section 3.1 of the lease permitted the landlord to recapture the premises and terminate the lease upon thirty days' notice to the

tenant if the tenant changed its permitted use without the landlord's prior written consent. However, Cooper contended that sections 3.1 and 1.1 both applied. Cooper explained that, because appellant failed to comply with the permitted–use provision within twenty-four hours despite two notices of violation, he proceeded properly under section 1.1(h) because appellant never made a prior request to change his permitted use for section 3.1 to apply under these circumstances.

After appellant's counsel questioned Cooper regarding the improvements made to the premises, appellee's counsel objected on the basis of relevance. Appellant's counsel argued that the testimony was relevant because appellee "watched Mr. Wheatley repair their building at his expense not five months ago, and they're now trying to kick him out and keep the benefits of those repairs." The trial court sustained the objection, finding that the testimony had "nothing to do with permitted use." Appellant proffered that he spent about $50,000 on leasehold improvements between the time he signed the lease and the time he opened the business.

Appellant testified that he was the owner of Velocity Sports Academy and that he had signed the lease with Dixie in July 2014. He explained that his business consisted of batting cages and speed and agility training. However, he explained that the only way to increase speed and agility is through strength conditioning. He admitted that his business used a rowing machine but contended that it did not violate the permitted use because it did not have a motor or a plug. Appellant testified that he received the first notice on December 18, 2014, and that the notice cited Zumba classes as a violation of the permitted use. He testified

that after receiving the first notice, he stopped offering Zumba classes. Although appellant moved and had his mail forwarded, he admitted at trial that it was his fault that he did not initially receive the second notice. He further indicated that he had received a copy of the second notice on February 3, 2015, but that he did not understand how he was in violation. Therefore, he testified that he took a guess and had the rowing machines removed on February 4, 2015, at approximately 3:00 p.m. or 4:00 p.m. However, after further cross-examination, he explained that the rowing machines were still on the premises but that they had been moved into the back hallway. Additionally, he admitted that the business still offered strength-and-conditioning classes and fitness-training classes. Appellant further testified that he had never requested to change the lease prior to his February 3, 2015 statement that he "would like to look at some adjustments in the lease," which was after he had received the second-notice violation. He stated that a termination notice was subsequently posted on the door on February 6, 2015, and that appellee filed a lawsuit on February 10, 2015, without giving him thirty days' prior notice.

At the conclusion of the trial, appellee's counsel orally argued that section 1.1(h) applied because it was the more specific provision of the lease and that section 3.1 did not apply because appellant did not request a change in the permitted use until after the second notice. Appellant's counsel, on the other hand, argued that section 3.1 applied and that the landlord had the right to terminate the lease only after thirty days' notice to the tenant. After hearing all oral argument, the trial court orally found that there had been a breach of the intended use and that the appropriate notices had been given.

SLIP OPINION

A written order for immediate possession was filed on March 30, 2015. In that order, the trial court found that appellee was entitled to immediate, sole, and exclusive possession of the premises and ordered the clerk of court to issue a writ of possession in favor of appellee. After a subsequent motion for attorney's fees and costs and a hearing, the trial court awarded appellee $8,473.50 in attorney's fees and $230 in costs. A timely notice of appeal and amended notice of appeal were filed from these orders, and this appeal followed.

On appeal, appellant first contends that the trial court erred by issuing the writ of possession. Specifically, appellant argues that he did not violate the permitted-use clause of the lease, that appellee waived any right to terminate the lease and evict him, and that appellee failed to comply with the notice requirements of section 3.1 of the lease prior to filing suit. We disagree.

Our standard of review on appeal from a bench trial is not whether there was substantial evidence to support the finding of the circuit court, but whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *See Omni Holding & Dev. Corp. v. C.A.G. Invs., Inc.*, 370 Ark. 220, 258 S.W.3d 374 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that an error has been committed. *Id.* Facts in dispute and determinations of credibility are within the province of the fact-finder. *Id.*

Appellant first argues that he did not violate the lease because the phrases "speed or agility training" and "exercise machines" were ambiguous and that any ambiguity should be construed against appellee. He alleges that speed-and-agility training go hand in hand with

strength-and-conditioning training. Furthermore, he alleges that the rowing machines that were placed in the business did not have motors and therefore did not violate the lease.

Section 1.1(h), regarding the permitted use of the premises, specifically provided,

Tenant shall use the Premises for a batting cage area and speed or agility training (provided, however, Tenant shall not use free weights or exercise machines on the Premises, or sell memberships for such speed and agility training), and for the limited incidental retail sale . . .

Landlord shall notify Tenant in writing of any ~~alleged~~ Permitted Use violation, and Tenant shall have twenty-four (24) hours after receiving such written notice from Landlord to cure the violation. If Tenant fails to cure such violation within such twenty-four (24) hour period, then a) Landlord may charge Tenant a penalty equal to Five Hundred Dollars ($500.00) for each day of the violation, and b) Landlord shall have the right to terminate this Lease upon delivery of a written termination notice (the "Termination Notice") to Tenant, and ~~c)~~ Tenant shall vacate the Premises within seventy-two (72) hours after its receipt of the Termination Notice.

Appellee introduced sufficient proof to establish that appellant was offering fitness classes and providing exercise machines in violation of the cited provision in the lease. Section 1.1(h) specifically and unambiguously prohibited the use of exercise machines without any exception, and appellant admitted at trial that he had provided rowing machines to his customers until at least February 4, 2015, in the late afternoon, which was more than twenty-four hours after the second notice. Additionally, appellant admitted at trial that he continued to offer strength-and-conditioning classes and fitness-training classes, which clearly were not permitted under the lease. Therefore, the trial court did not clearly err in finding that appellant was in violation of the permitted-use provision contained in the lease.

Next, appellant asserts on appeal that appellee waived any right to terminate the lease because appellee promoted and advertised appellant's business, including images of adult

7

athletes using free weights. Based on our review of the abstract, we conclude that we cannot consider this issue on appeal. Although appellant may have listed "waiver" along with a number of other affirmative defenses in his answer, we have held that something more than a mere assertion of an argument in the pleadings is required to preserve an issue for appellate review. *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 60 S.W.3d 458 (2001). Additionally, appellant's argument was not well developed, and we have held that we will not consider arguments without convincing argument or citations to authority. *Seth v. St. Edward Mercy Med. Ctr.*, 375 Ark. 413, 291 S.W.3d 179 (2009). Therefore, appellee correctly argues that appellant was required to raise before the circuit court the precise defenses and arguments to be relied on in his appeal to ensure that there is an opportunity for them to be fully developed. *See Housley v. Hensley*, 100 Ark. App. 118, 265 S.W.3d 136 (2007). A party may not wait until the outcome of a case to assert a legal argument, nor can he change the grounds for an objection on appeal but is bound by the scope and nature of the objections presented at trial. *Id.*

Appellant additionally argues that appellee failed to comply with the notice requirements of section 3.1 prior to filing suit. Specifically, appellant argues that section 3.1 of the lease required appellee to provide thirty days' notice prior to terminating the lease, and appellee failed to do so. Appellee contends that appellant misconstrues that provision of the lease, that section 1.1(h) applied, and that appellee complied with the notice requirements of section 1.1(h). We agree with appellee.

Section 3.1 specifically provides,

<u>Use of Premises</u>. Tenant (and Tenant's assignee or sublessee) shall use the Premises under the Trade Name and solely for the Permitted Use described in Section 1.1(h) and for no other use or purpose without Landlord's express written consent, which consent may be granted or withheld in Landlord's sole and subjective discretion, including, without limitation, for the purposes of achieving Landlord's desired tenant mix.  Tenant will not use the Premises in such a way as to cause unreasonable depreciation.  Landlord shall have the right, to be exercised by giving written notice to Tenant within ten (10) business days *after receipt of Tenant's request*, to change its Permitted Use or at any time if Tenant changes its Permitted Use without Landlord's prior written consent to recapture the Premises and terminate the Lease upon thirty (30) days' notice to Tenant; provided, however, subject to the provisions of Section 1.1(h), that if Tenant shall terminate the unauthorized use within ~~five (5) days~~ twenty-four (24) hours after receipt of notice from Landlord, Landlord's right to ~~recapture the Premises~~[ ] terminate the Lease is null and void.

(Emphasis added.)

Despite appellant's argument to the contrary, section 3.1 was subject to section 1.1(h) and clearly applied in circumstances where the tenant had first requested a change to the tenant's permitted use.  Here, appellant admitted that he did not request a change to the lease until after appellee had already complied with section 1.1(h) and delivered the second notice.  Thus, because section 3.1 was inapplicable and because appellee complied completely with section 1.1(h), as outlined above, the trial court did not err in finding that appellee had complied with the applicable notice provisions to terminate appellant's lease.  Accordingly, we affirm on this issue.

Next, appellant contends that the trial court erred by not allowing him to introduce evidence as to the cost and types of improvements he had made to appellee's building between the time he signed the lease and the time he opened for business.  Appellee argues that the circuit court correctly excluded this evidence because it was irrelevant and therefore inadmissible, and we agree.

Our standard of review for evidentiary rulings is well settled. The trial court makes the determination as to the admissibility of testimony. *Woods v. Woods*, 2013 Ark. App. 448. The trial court must determine the relevancy, competency, and probative value of the testimony. *Id*. The admissibility of testimony is within the trial court's discretion, and the trial court will not be reversed absent an abuse of that discretion. *Id*. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ark. R. Evid. 401 (2015). It is enough if the evidence reasonably shows that a fact is slightly more probable than it would appear without the evidence. *Bishop v. Tariq, Inc.*, 2011 Ark. App. 445, 384 S.W.3d 659.

Appellant failed to provide this court with a sufficient argument as to why the testimony regarding the leasehold improvements was relevant to the trial court's decision that would support reversal on appeal. The fact that appellant made expenditures to improve the leased space does not have any tendency to make the fact that appellee was entitled to possession under a specific provision of the lease more or less probable. Therefore, the testimony was irrelevant, and the trial court did not abuse its discretion in ruling that the evidence was inadmissible.

Finally, appellant contends that the trial court's judgment awarding costs and attorney's fees to appellee should be reversed automatically if the court reverses its order for immediate possession. Because we do not reverse the trial court's order, we affirm on this issue as well.

Affirmed.



GRUBER and WHITEAKER, JJ., agree.

*Everett, Wales & Comstock*, by: *Jason H. Wales*, for appellant.

*Conner & Winters, LLP*, by: *Todd P. Lewis* and *Amber J. Prince*, for appellee.