

# ARKANSAS COURT OF APPEALS

DIVISION II
**No.** CV-16-538

| | |
|---|---|
| JESSICA TAYLOR<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **OPINION DELIVERED** OCTOBER 5, 2016<br><br>APPEAL FROM THE CRITTENDEN COUNTY CIRCUIT COURT, [NO. 18JV-14-59]<br><br>HONORABLE RALPH WILSON, JR., JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART; DISMISSED IN PART |

## ROBERT J. GLADWIN, Chief Judge

Appellant Jessica Taylor appeals the March 28, 2016 order of the Crittenden County Circuit Court terminating her parental rights to her minor children, A.T.1 and A.T.2, as well as the attempted adjudication of her infant daughter, A.T.2, as dependent-neglected that occurred at the beginning of the November 3, 2015 hearing held on the termination-of-parental-rights (TPR) petition filed by appellee Arkansas Department of Human Services (ADHS). As an initial matter, we dismiss the appeal of the adjudication of A.T.2 as dependent-neglected. The TPR order appealed from was entered on March 28, 2016, and appellant filed a timely notice of appeal on March 31, 2016, that specifically indicated the appeal of the March 28, 2016 order with a reference to a hearing regarding the adjudication and the TPR order. The TPR order, however, does not reference the adjudication of A.T.2, and a nunc pro tunc adjudication order as to A.T.2 was not filed until July 6, 2016

(effective as of the November 3, 2015 hearing date). Because the record was lodged with our court on June 9, 2016, the trial court no longer had jurisdiction to enter the nunc pro tunc order. It was filed with our court, along with a stipulation from the parties to supplement the record, on July 18, 2016, but that does not cure the fact that the order attempting to adjudicate A.T.2 dependent-neglected is a nullity.

With respect to the TPR order, we affirm as to A.T.1 and reverse and remand with respect to A.T.2. We will address the supporting grounds for termination of appellant's rights as to the minor children individually.

## I. *Facts*

On March 18, 2014, ADHS received a hotline referral from Crittenden County Regional Hospital about appellant, and ADHS family service worker Deidra Reed investigated. The nurse reported concerns about appellant's "current living situation and her mental capability." Appellant—the mother of then one-month-old A.T.1—reported that, about a month before, she had returned to town. She initially lived with her father, but he did not have working utilities, so she moved into the local women's shelter. Appellant reported that her son, S.B., was in foster care in Oklahoma because she had "signed her rights away . . ." because she could not afford to care for him. According to the investigation, appellant appeared to be "low functioning" and had reported that she had been prescribed PTSD and anxiety medications. Given the circumstances, ADHS assumed immediate emergency custody of A.T.1.

Three months later, the trial court conducted an adjudication hearing. The trial court found that, given appellant's failure to provide adequate housing, she had neglected A.T.1.

2

A.T.1 was adjudicated dependent-neglected on June 10, 2014, and the trial court ordered A.T.1 to remain in ADHS's custody. Reunification and adoption were made concurrent case goals. Appellant was ordered to do certain things to achieve reunification: (1) complete a psychological evaluation and follow all recommendations; (2) obtain safe, stable housing, including functional utilities; (3) obtain stable employment or other means of income; (4) complete intensive parenting classes; and (5) submit to random drug screens.

As of the September 2014 review hearing, appellant was in substantial compliance with the trial court's orders, having completed parenting classes and having submitted to a psychological evaluation. The trial court maintained a goal of reunification and ordered A.T.1 to remain in ADHS's custody. The case was not reviewed again until February 2015; however, the trial court entered an interim order on December 16, 2014, that ordered ADHS to provide appellant with housing-assistance services.

On June 1, 2015, appellant gave birth to A.T.2 and was allowed to leave the hospital with the baby. However, upon learning that appellant had given birth, ADHS appeared at her residence—she had resumed living with her father in his camper—and without entering or verifying the conditions of the home, removed A.T.2 from appellant's custody based on the following:

> This Worker and FSW Fleming went to the address with [local police] assisting. Upon arrival This Worker and FSW Fleming informed [appellant's] father that [ADHS] was going to have to take custody of [A.T.2] and he and [appellant] refused and [appellant's father] locked [appellant and A.T.2] in the camper and police then instructed him to open the door. [Appellant] then began to yell outside of the camper cursing and making racial slurs to the Workers and stated that she would put a bullet through her head. At this time this Worker and FSW Fleming began to back away from the camper and informed Law Enforcement of what [appellant] had stated and they then backed off as well but were later able to talk [appellant] out of the camper.

It was determined that since A.T.1 had been in foster care, appellant's circumstances had not improved:

> The camper does not have any working utilities. The living situation is not suitable to care for a child at any given time. The mental state of [appellant] appears to be unstable and there is no financial means to provide for [A.T.2].

ADHS assumed immediate emergency custody of A.T.2 and filed a petition for emergency custody and dependency–neglect on June 9, 2015, stating that A.T.2 had been removed because the home was inadequate and because appellant had an open case on A.T.1.

On June 18, 2015, just seventeen days after A.T.2's birth, ADHS filed a TPR petition alleging that TPR was in both children's best interest pursuant to two statutory grounds set out in Arkansas Code Annotated section 9–27–341(b)(3)(B)(i)*(a)* and (vii), with only the latter ground being alleged in regard to A.T.2. The trial court set a termination hearing on the TPR petition and scheduled A.T.2's adjudication hearing for the same date.

At the hearing on November 3, 2015, the trial court first heard evidence pertaining to A.T.2's adjudication and ordered her adjudicated dependent–neglected based on inadequate housing and because "[A.T.1] is in [A]DHS legal custody . . . ." The trial court then moved directly to the TPR hearing on both children, and at the conclusion of that hearing, terminated appellant's parental rights to both A.T.1 and A.T.2.

The TPR order was entered on March 28, 2016, and appellant filed a timely notice of appeal on March 31, 2016, that specifically indicated the appeal of the order of the trial court entered on March 28, 2016, with reference to a hearing regarding adjudication and TPR. The record was lodged with our court on June 9, 2016, and a nunc pro tunc

4

adjudication order as to A.T.2 was not filed until July 6, 2016, effective as of the November 3, 2015 hearing date. It was filed with our court, along with a stipulation from the parties to supplement the record, on July 18, 2016.

## II.  *Standard of Review*

The standard of review in termination-of-parental-rights appeals is de novo, but we reverse a trial court's decision to terminate parental rights only when it is clearly erroneous. *Hernandez v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 250, 492 S.W.3d 119. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a distinct and firm conviction that a mistake was made. *Id.* Credibility determinations are left to the fact-finder, here, the trial court. *Schaible v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 541, 444 S.W.3d 366.

## III.  *Applicable Law*

The right of a natural parent to the custody of his or her child is "one of the highest of natural rights." *Mayberry v. Flowers*, 347 Ark. 476, 484, 65 S.W.3d 418, 424 (2002). Termination of parental rights is an extreme remedy and is in derogation of the natural rights of the parents. *Helvey v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 418.

The purpose of terminating a parent's rights to his or her child is to provide permanency in that child's life when return to the family home "cannot be accomplished in a reasonable period of time as viewed from the [child's] perspective." Ark. Code Ann. § 9-27-341(a)(3). A trial court may order termination of parental rights if it finds there is an "appropriate permanency placement plan" for the child, *see* section 9-27-341(b)(1)(A), and further finds by clear and convincing evidence that termination is in the best interest of the

child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). Finally, there must be clear and convincing evidence to support one or more of the nine grounds for termination listed in Arkansas Code Annotated section 9-27-341(b)(3)(B).

IV.  *Discussion*

A.  Best Interest - Adoptability

Pursuant to Arkansas Code Annotated § 9-27-341(b)(3)(A)(i)–(ii), in considering "best interest," the trial court must consider two factors: (1) the likelihood of the children's adoption as a permanency plan and (2) potential harm caused by returning the children to the custody of the parent. Although the evidentiary threshold is extremely low regarding the adoptability requirement based on recent interpretive case law, this court does require some evidence regarding adoptability. *See Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383.

Here, Demetria Willis, the ADHS caseworker, testified that the foster family who had placement of both A.T.1 and A.T.2 at the time of the hearing was "interested in adopting," but appellant maintains that this mere manifestation of "interest" does not translate into action and does not answer the statutory question of whether the children are likely to be adopted if TPR occurs. She argues that the expression of "interest" does not translate into the finding made by the trial court that there is a "good likelihood that the children will be adopted by the current foster parents . . . based on the testimony of [County Supervisor Bessie Hatchett], who said that the foster parents wish to adopt both girls."

6

Appellant notes that Ms. Hatchett never offered such testimony; the only testimony of the foster parents' "interest" was offered by Ms. Willis and that Ms. Willis never stated that the foster parents "wish" to adopt both girls. Appellant argues that it was incumbent on ADHS to put on evidence of the likelihood of the children's adoption and not simply whether a single family had a mere interest. Because ADHS did not put on any such evidence, appellant claims that it was error for the trial court to find that A.T.1 and A.T.2 were likely to be adopted.

We disagree, noting that the issue is whether there was evidence that addressed the likelihood of adoption. If there was, then the statutory requirement is satisfied. *See Thompson v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 124. We hold that Ms. Willis's opinion that, if appellant's parental rights were terminated, A.T.1 and A.T.2 would be adoptable, addressed the likelihood-of-adoption issue. She specifically stated that "[t]he foster family is interested in adopting." ADHS maintains, and we agree, that this testimony provides sufficient evidence to support the trial court's adoptability finding. *See Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004) (holding that evidence, which consisted primarily of the caseworker's testimony that juveniles were adoptable, was sufficient to support adoptability finding).

### B.  Best Interest – Potential Harm

The TPR order states that the trial court found the testimony of Ms. Hatchett to be credible and that appellant's lack of adequate housing with working utilities, lack of employment or income, mental-health issues and instability, and failure to take her prescription medication as prescribed demonstrate how both A.T.1 and A.T.2 would be at

risk of potential harm if returned to her. Appellant does not argue that the trial court erred in making this finding, and this court will not consider arguments without convincing argument or citations to authority. *Wheatley v. Dixie Mall 2003, LLC*, 2016 Ark. App. 94, 482 S.W.3d 760.

### C.  Statutory Grounds for TPR

Section 9-27-341(b)(3)(B) provides nine different grounds that warrant termination, but to terminate an individual's parental rights only one ground is needed. *Albright v. Ark. Dep't of Human Servs.*, 97 Ark. App. 277, 248 S.W.3d 498 (2007). And on de novo review, the court can affirm the trial court's termination decision on any ground that was alleged in the petition and proved. *Fenstermacher v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 88, 426 S.W.3d 483.

### 1.  *Twelve-month; failure to remedy*

ADHS pled, and the trial court based TPR in part on this ground, in regard only to A.T.1. Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)*(a)*, allows for termination if termination is in the child's best interest, and the child has

> been adjudicated by the court to be dependent-neglected and has continued to be out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent.

There are three conditions to this statute:  (1) that the child has been adjudicated dependent-neglected; (2) that the child has continued out of the custody of the parent for twelve months; and (3) the parent has failed to remedy the conditions causing removal despite a meaningful effort by ADHS to correct those conditions. Appellant concedes the first two

conditions, but she claims that ADHS's efforts to rehabilitate in regard to the issues on which it and the trial court relied as a basis for TPR—inadequate housing and mental instability—were not "meaningful."

We hold that appellant's meaningful-efforts challenge must fail. Neither the abstract nor the addendum shows that, at any time in this case, the trial court made a no-reasonable-efforts finding at any time in this case and appellant did not appeal any of the trial court's reasonable-efforts findings. She neither challenged the appropriateness of any ADHS-offered reunification service nor argued that there were particular reunification services that ADHS should provide. We hold that these failures prevent this court from considering appellant's meaningful-efforts argument with respect to the termination of her parental rights to A.T.1. *See Emmons v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 541.

2. *Other subsequent-factors or issues*

ADHS also pled, and the trial court based TPR in part, with regard to both A.T.1 and A.T.2, on the ground in Arkansas Code Annotated section 9-27-341(b)(3)(B)(vii)*(a)*, *(c),* which allows for TPR if termination is in the children's best interest, and

> (vii)*(a)* [t]hat other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrate that placement of the juvenile in the custody of the parent is contrary to the juvenile's health, safety, or welfare and that, despite the offer of appropriate family services, the parent has manifested the incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the parent's circumstances that prevent the placement of the juvenile in the custody of the parent.
> *(c)* For purposes of this subdivision (b)(3)(B)(vii), the inability or incapacity to remedy or rehabilitate includes, but is not limited to, mental illness, emotional illness, or mental deficiencies.

Appellant argues that the trial court's reliance on this ground in regard to both A.T.1 and A.T.2 was in error because the "other factors or issues" cited by ADHS in its TPR petition and found by the trial court in its TPR order were not factors or issues that arose subsequent to the filing of the dependency-neglect petition. Rather, they were factors or issues that caused the initial removal of both A.T.1 and A.T.2.

Appellant maintains that, by statutory definition, it was a temporal impossibility for the "other factors or issues" ground to have been triggered in this case. *See Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 90, 455 S.W.3d 347 (aff'd on other grounds, in which two dissenting judges, Harrison and Whiteaker, wrote separately to analyze how this portion of the statute plainly applies only when the facts that allegedly support a petition to terminate arise after ADHS has filed the petition for dependency-neglect). Appellant argues that, here, A.T.1 and A.T.2 were initially removed because appellant was living in what ADHS deemed to be an environmentally deficient camper at the time of each child's birth, and because ADHS did not believe she had the mental capability to safely parent the children. In other words, she maintains that these issues were the initial cause of removal for both A.T.1 and A.T.2 rather than factors arising subsequent to ADHS filing the petition(s) for dependency-neglect pursuant to section 9-27-341(b)(3)(B)(vii).

ADHS stated in the affidavit attached to the petition for emergency custody and dependency-neglect that A.T.1 had been removed because ADHS needed to ensure her health and safety needs. The health and safety concerns listed in the affidavit were appellant's inadequate housing based on her living with her father in the camper and her mental instability.

SLIP OPINION

The affidavit attached to ADHS's petition for emergency custody and dependency-neglect stated that A.T.2 was removed because of appellant's inadequate housing, her return to living in the camper with her father, and her mental instability. As the investigator explained in the affidavit, ADHS informed appellant "upon arrival" that it would be taking A.T.2 into custody because of her already-open case. The affidavit further detailed that appellant was "unstable" and had no financial means to provide for the child—that ADHS had already provided her with parenting classes, mental-health counseling, visitation, and referrals for housing, and that A.T.2 was "in danger" due to "environmental neglect" and "the history of this family . . . ."

Appellant maintains that these factors or issues that caused the initial removal of the children is further demonstrated by testimony provided at the TPR hearing by ADHS County Supervisor Hatchett. Ms. Hatchett testified that ADHS took A.T.1 into custody because of appellant's inadequate housing and mental-health issues and that A.T.2 was taken into custody because of continued inadequate housing and continued mental-health concerns. These factors and issues were identical factors and issues relied on by the trial court to support this "subsequent factors" ground in regard to both A.T.1 and A.T.2.

With regard to A.T.1, we disagree and hold that there was evidence presented to support the trial court's finding that factors that did arise subsequent to the filings of the dependency-neglect petition(s)—specifically as to the extent of appellant's mental health issues. When A.T.2's dependency-neglect petition was filed, appellant's mental-health had worsened since the time A.T.1's dependency-neglect petition was filed. In 2014, appellant's mental-health diagnosis was depressive disorder (Axis I), but no personality disorder (Axis

II). However, according to testimony from Emily Unglesby, a licensed clinical social worker, appellant's mental health had deteriorated by the time of the hearing on the TPR petition, causing her diagnosis to change to "seriously mentally ill." This diagnosis—SMI— includes "major depression with psychotic features." We also find no merit in appellant's argument regarding appropriate family services to rehabilitate appellant's circumstances, especially with respect to the inadequate-housing issue. It is undisputed that A.T.1 has had special needs since this case began, including the necessity of using a feeding tube. The same conditions, however, that warranted A.T.1's initial entry into foster care—appellant's failure to provide adequate housing to provide for those needs—still existed when A.T.2 entered foster care. Yet throughout the pendency of A.T.1's case, appellant never challenged the appropriateness of any ADHS-offered reunification services. She never argued that there were particular reunification services that ADHS should provide. Accordingly, we find no error in the trial court's finding with respect to this ground as related to A.T.1.

The same cannot be said with respect to A.T.2. Appellant gave birth to A.T.2 on June 1, 2015, and by June 9, 2015, ADHS had removed A.T.2 from her custody and filed a petition for emergency custody and dependency-neglect stating that A.T.2 had been removed because the home was inadequate and because appellant had an open case on A.T.1. On June 18, 2015, only seventeen days after A.T.2's birth, ADHS filed the TPR petition, alleging that TPR was in A.T.2's best interest, specifically pursuant to the "subsequent factors" statutory ground set out in section 9-27-341(b)(3)(B)(vii)*(a)*.

We hold that the trial court's decision to terminate appellant's parental rights as to A.T.2 based on this ground was clearly erroneous. There is simply not enough supporting

evidence to indicate that such other factors or issues in the mere nine days subsequent to the filing of the petition for dependency-neglect demonstrated that placement of A.T.2 in appellant's custody was contrary to the child's health, safety, or welfare. The evidence supports that the circumstances had not changed. Moreover, the evidence is insufficient to support a finding that appropriate family services were offered during that time period to help appellant remedy the initial circumstances that led to A.T.2's removal. Accordingly, there is no need to analyze her level of incapacity or indifference because no such offer was made.

ADHS must meet the statutory requirements for each child involved in a particular case. Here, it failed to do so with respect to A.T.2, in effect, just latching on to its evidence and analysis with respect to A.T.1. More effort is required from ADHS under its statutory authority, and more analysis is required from the trial court in its determination of each child's circumstances. Accordingly, we affirm the termination of appellant's rights as to A.T.1 but reverse and remand the trial court's findings with respect to A.T.2.

Affirmed in part; reversed and remanded in part; dismissed in part.

VIRDEN and GLOVER, JJ., agree.

*Leah Lanford*, Ark. Pub. Defender Comm'n, for appellant.

*Andrew Firth*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.