Cite as 2023 Ark. App. 400

# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-23-88

| | |
|---|---|
| ASHLEY WAGNER<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered** September 27, 2023<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72JV-21-523]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

This is an appeal from an order terminating Ashley Wagner's parental rights to her four minor children.[1] They came into custody of the Arkansas Department of Human Services (DHS) 11 August 2021 through an emergency removal because of concerns about her homelessness and methamphetamine use. Ashley was actively high and paranoid when DHS workers spoke to her in Fayetteville. She admitted being an addict and having been in drug rehab multiple times, as recently as May 2021. The three oldest children had been in DHS custody before.

The Washington County Circuit Court issued a case plan and orders designed to facilitate all four children's reunion with Ashley as a fit parent, the goal the court set when

---

[1]The circuit court also terminated the parental rights of Roy Dabney, the biological father of the two youngest children. He has not appealed.

it adjudicated them dependent-neglected in this proceeding September 29. Key provisions included orders not to use drugs or alcohol; to follow the recommendations after a drug-and-alcohol assessment; to submit to random drug screens as requested by DHS; to maintain stable housing and employment; and to communicate with DHS family service worker Hayley Miles at least once a week and keep her informed of any change in her address or telephone number.

After a January 2022 review hearing, the circuit court found that Ashley was still using methamphetamine, had yet to complete inpatient drug treatment,[2] and had not achieved stable housing or employment. By July 20, Ashley was living in a week-to-week hotel. Since the proceedings began, she had spent four months homeless, a month living with her mother, eighteen days in a hospital, and two or three months in a Fort Smith apartment before she was evicted. She continued to associate with Dabney and refer to him as family—despite a history of domestic violence and requests to remove him from her home, and a ten-year no-contact order entered at the end of the previous DHS proceeding. Though Ashley had partly complied with the court's orders, the court found she had not demonstrated stability in housing or employment, or made measurable and sustainable progress toward reunification. So it changed the permanency goal to adoption.

A termination hearing was held October 26. The circuit court entered an order on 21 November 2022 finding, by clear and convincing evidence, that DHS had proved three statutory grounds to terminate Ashley's parental rights and that terminating her parental

---

[2]The circuit court had not yet explicitly ordered Ashley to complete inpatient drug treatment. After an emergency review hearing March 17, it ordered her to enter and successfully complete residential drug treatment.

rights was in her children's best interest.[3]   Here, she argues too little evidence supported those findings.

Though we review these cases de novo, we will not reverse the circuit court's decision unless its findings are clearly erroneous, which means we are left with a "definite and firm conviction that a mistake has been made" even if some evidence supports them. *Meredith v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 120, at 3, 513 S.W.3d 909, 910–11. We give the circuit court's findings some deference because we cannot observe the witnesses' testimony and assess their credibility, as it could.  *Cheney v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 209, 396 S.W.3d 272.  Proof of just one statutory ground is enough to terminate parental rights.  *Gossett v. Ark. Dep't of Hum. Servs.*, 2010 Ark. App. 240, 374 S.W.3d 205.  Further, in termination cases, "time is viewed from the juvenile's perspective and the best interests of the children take precedence at every stage of the proceedings." *Burkett v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 570, at 5, 507 S.W.3d 530, 534 (citing Ark. Code Ann. § 9-27-102 (Repl. 2020 & 9-27-341(a)(3) (Supp. 2023)).

Those formal statements might offer parents in ongoing dependency-neglect proceedings little guidance about how to save their parental rights.  They boil down to this: Some progress is not always enough.  A parent must make enough progress *soon enough* that

---

[3]The circuit court found clear and convincing evidence that despite appropriate efforts by DHS, the children remained out of Ashley's custody for twelve months, and the conditions that caused the removal had not been remedied, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*; that other factors or issues arose after the dependency-neglect petition was filed that demonstrated placement with her would be contrary to their health, safety, or welfare, and she manifested the incapacity or indifference to remedy them, *id*. § 9-27-341(b)(3)(B)(vii)*(a)*; and that there was little likelihood that continued services would result in successful reunification.  *Id*. § 9-27-341(b)(3)(B)(ix)*(a)*.

maintaining it through the end of the case would demonstrate that the parent would remain safe, stable, and sober if the children were returned. The harder a habit is to break, the sooner the parent needs to break it. And few habits are harder to break than methamphetamine use. Appeals where a parent made eleventh-hour progress before her parental rights were terminated are among the hardest we decide. Inevitably, some of them will involve parents who would—and did—maintain their fitness, and could have proved it with more time. But the legal question we must answer is whether the circuit court clearly erred by doubting them on the record it had. It did not. We hope that Ashley's progress will continue, but still affirm the termination of her parental rights.

When the hearing convened, Ashley was in a better place than she had been when the case began. She was living in Hot Springs, set to sign the lease on a two-bedroom house the following day. She had sufficient income for rent in a job she had held more than a month. After being scheduled six times to start inpatient rehabilitation, she completed it at Harbor House in Hot Springs September 17. She had tried the Fort Smith Harbor House first, but she recognized people there she had used drugs with. She testified that she thought, "This is gonna be pointless," because they would end up sharing "war stories" and glorifying drug use. She attributed the delay getting to Hot Springs to trouble getting transportation assistance from DHS. In Hot Springs she was attending NA and AA meetings, sometimes two or three times a day. She had not used any illegal drugs or alcohol in sixty days and dated her last methamphetamine use to July 2022, after the permanency-planning hearing. She testified that she missed drug screens—twenty-five of them, according to DHS records—because she either wasn't notified or the test was scheduled in the wrong city.

4

The circuit court praised Ashley's recent sobriety, but found that despite reasonable efforts by DHS, she had not remedied the exposure to methamphetamine and housing instability that caused the children to be removed from her custody because she had not demonstrated stability and sobriety long enough. It noted that she had not completed inpatient drug treatment until 19 September 2022, more than a year after the case had begun. The circuit court was better positioned to weigh the evidence on this point than we are. *E.g.*, *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, at 5, 554 S.W.3d 285, 289 (noting that we afford heightened deference to the circuit court's superior position to observe the parties personally and weigh their credibility). On the record we have, we cannot say it clearly erred. So we do not need to discuss the other grounds for termination.

Finally, Ashley argues that terminating her parental rights was not in her children's best interest. The best-interest determination requires considering the likelihood that the child will be adopted and the potential harm the child could suffer if there is continued contact with the parent. *E.g.*, *McNeer v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 512, at 5, 529 S.W.3d 269, 272. The circuit court heard sufficient evidence that the children are adoptable. Ms. Miles from DHS testified that all four are bright and sweet natured, with no medical or emotional barriers to adoption. The foster parent for the two youngest children, whom Ashley knows from church, expressed interest in adopting all four. There was testimony that Xavier Mahone, a paternal uncle to two of the children, might likewise be willing to adopt them.[4]

---

[4] *See Taylor v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 453, at 7, 503 S.W.3d 813, 818 (affirming adoptability finding based on testimony that the foster family was interested in adoption). DHS had not finished clearing Mahone as an appropriate placement, Miles

Most of Ashley's best-interest argument strays too far from what she argued in circuit court to address on appeal. *See Rocha v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 454, at 15, 637 S.W.3d 299, 309 (citing *Mitjans v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 472, 561 S.W.3d 747). What's left is an argument that the evidence of the children's bonds with her, and with each other as siblings, justified giving her more time to demonstrate that her progress would continue. But "a child's need for permanency and stability may override a parent's request for more time to improve the parent's circumstances." *Kloss v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 389, at 8–9, 585 S.W.3d 725, 730. The circuit court was concerned that the uncertainty about whether the children would remain in foster care was affecting their mental health. This was the second time the three older children had been in foster care. The youngest had been in foster care more than half his life. The court concluded that Ashley had not yet demonstrated that she would remain sober from meth when tempted and that the children need permanency now. Potential harm "must be viewed in a forward-looking manner and in broad terms, including the harm the child suffers from the lack of a stable, permanent home." *Id.* at 8, 585 S.W.3d at 730. Having reviewed the record de novo, we conclude the circuit court's finding that termination was in the children's best interest was not clear error.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

---

testified, because she could not obtain his contact information until a few weeks before the termination hearing. After the circuit court's oral ruling on termination, it ordered DHS to conduct a home study on Mahone and the other foster parents who had been identified as possible adoptive homes.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor children.